Richard S. Busch, SBN 319881
*rbusch@kingballow.com*
Paul H. Duvall, SBN 73699
*pduvall@kingballow.com*
**KING & BALLOW**
1999 Avenue of the Stars; Suite 1100
Century City, CA  90067
Telephone:  424.253.1255
Facsimile: 888.688.0482

Attorneys for Defendants
JILLIAN MICHAELS, EM DIGITAL,
LLC and EMPOWERED MEDIA, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LISA FRIEDMAN, individually and on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br> vs. <br><br> JILLIAN MICHAELS, an individual; EM DIGITAL, LLC, a Florida Limited Liability Company; EMPOWERED MEDIA, LLC, a California Limited Liability Company; and DOES 1-100, inclusive, <br><br> Defendants. | Case No.: 2:18-cv-09414-GW-SS <br><br> <u>**CLASS ACTION**</u> <br><br> **Honorable George H. Wu** <br><br> **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(B)(2) AND (B)(3)** <br><br> Date:   September 16, 2019 <br> Time:  8:30 a.m. <br><br> Complaint Filed: August 20, 2018 <br> Removed: November 5, 2018 <br> Trial Date: March 2, 2020 |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................ 1

II.    STATEMENT OF FACTS ......................................................................... 3

       A.   PLAINTIFF LISA FRIEDMAN'S UNIQUE EXPERIENCE .............. 4

       B.   OTHER USER EXPERIENCES ........................................................ 8

III.   LEGAL STANDARD ................................................................................ 11

IV.    ARGUMENT .............................................................................................. 12

       A.   Plaintiff's Proposed Class is Not Ascertainable. ................................ 12

       B.   Plaintiff's Proposed Class Fails to Satisfy Numerosity. ...................... 14

       C.   Plaintiff's Claims Are not Typical of the Proposed Class. ................... 15

       D.   Plaintiff and her Counsel Are not Adequate Representatives. ............. 19

       E.   Plaintiff's Proposed Class Lacks Commonality and
            Predominance. ..................................................................................... 22

       F.   Rule 23(b)(2) Certification is not Appropriate. .................................... 23

       G.   Plaintiff Cannot Satisfy the Superiority Requirement of 23(b)(3). ...... 24

V.     CONCLUSION ........................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Amey v. Cinemark USA, Inc.*,

    No. 13-cv-05669-WHO, 2018 U.S. Dist. LEXIS 140156, at *13 (N.D. Cal. Aug. 16, 2018) ................................................................................................................. 16, 19

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,

    20 Cal. 4th 163, 188 (Cal. 1999) ....................................................................... 11

*Coleman v. Theranos, Inc.*,

    325 F.R.D. 629, 650 (N.D. Cal. 2018) ............................................................... 25

*Dukes v. Wal-Mart Stores, Inc.*,

    603 F.3d 571, 588 (9th Cir. 2010) ................................................................. 11, 12

*Ellis v. Costco Wholesale Corp.*,

    657 F.3d 970, 979-80 (9th Cir. 2011) ................................................................ 11

*Feske v. MHC Thousand Trials L.P.*,

    No. 11-4124 PSG, 2013 U.S. Dist. LEXIS 37232, at *38-40 (N.D. Cal. Mar. 18, 2013) .. 20

*Gen. Tel. Co. of the Southwest v. Falcon*,

    457 U.S. 147, 161 (1982) ............................................................................. 11, 22

*Gossoo v. Microsoft Corp.*,

    No. CV 13-2043 SVW, 2013 U.S. Dist. LEXIS 149677, at *4 (C.D. Cal. Oct. 9, 2013).. 22, 23

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011, 1020 (9th Cir. 1998) ................................................................. 16

*Hanon v. Dataproducts Corp.*,

    976 F.2d 497, 508 (9th Cir. 1992) ..................................................................... 16

*In re Autozone, Inc.*,

    289 F.R.D. 526, 545 (N.D. Cal. Dec. 21, 2012) ................................................ 13

*In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*,

    277 F.R.D. 586, 594 (S.D. Cal. 2011) .............................................................. 12

*In re N. Dist. Of Cal., Dalkon Shield IUD Prods. Liab. Litig.*,
    693 F.2d 847, 854 (9th Cir. 1982) ................................................................. 23, 24

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942, 969 n. 25 (S.D. Cal. 2012) ............................................ 25

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*,
    978 F. Supp. 2d 1053 (C.D. Cal. 2013) .......................................................... 21

*In re Toys "R" Us – Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
    300 F.R.D. 347, 373 (C.D. Cal. 2013) ........................................................... 20

*In re Volkswagen "Clean Diesel" Mktg.*,
    264 F. Supp. 3d (N.D. Cal. 2017) ................................................................... 21

*Kim v. Tinder, Inc.*,
    No. CV 18-03093 JFW (AS), 2019 U.S. Dist. LEXIS 108034 (C.D. Cal. June 19, 2019). 21

*Konik v. Time Warner Cable*,
    No. CV 07-763 SVW (RZx), 2010 U.S. Dist. LEXIS 136923, at *12 (C.D. Cal. Nov. 24, 2010) .................................................................................................................. 22

*Kristensen v. Tip Top Capital, Inc.*,
    No. CV 18-2103 FMO (ASx), 2018 U.S. Dist. LEXIS 90237 (C.D. Cal. May 30, 2018) . 22

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583, 589 (3d Cir. 2012) ................................................................... 15

*Mass. Mut. Life Ins. Co. v. Superior Court*,
    97 Cal.App.4th 1282, 1292 (Cal. Ct. App. 2002) .......................................... 25

*Mazur v. eBay, Inc.*,
    257 F.R.D. 563, 567 (N.D. Cal. May 4, 2009) .......................................... 12, 13

*Munoz v. Giumarra Vineyards Corp.*,
    No. 1:09-cv-00703-AWI-JLT, 2012 U.S. Dist. LEXIS 93043, at *13 (E.D. Cal. July 5, 2012) .............................................................................................................. 15, 25

*Newton v. Am. Debt Servs.*,
    No. C-11-3228 EMC, 2015 U.S. Dist. LEXIS 74626, at *16 (N.D. Cal. June 9, 2015) ..... 13

*Nunez v. BAE Sys. San Diego Ship Repair, Inc.*,
    292 F. Supp. 3d. 1018, 1035 (S.D. Cal. 2017) ................................................ 21

iv

*O'Connor v. Boeing N. Am., Inc.*,

    184 F.R.D. 311, 319 (C.D. Cal. 1998) .............................................................. 13

*Otto v. Abbott Labs., Inc.*,

    No. 5:12-cv-01411-SVW-DTB, 2015 U.S. Dist. LEXIS 174945, at *4 (C.D. Cal. Sept. 29, 2015).......................................................................................................... 12, 13

*Parsons v. Ryan*,

    754 F.3d 657, 681 (9th Cir. 2014)................................................................... 22

*Rodriguez v. Gates*,

    No. CV 99-13190 GAF (AJWx), 2002 U.S. Dist. LEXIS 10654, at *33 (C.D. Cal. May 30, 2002)................................................................................................................ 13

*Rodriguez v. Hayes*,

    591 F.3d 1105, 1124 (9th Cir. 2010)............................................................... 16

*Schwartz v. Harp*,

    108 F.R.D. 279, 282 (C.D. Cal. 1985) ............................................................ 16

*Shields v. Walt Disney Parks & Resorts US, Inc.*,

    279 F.R.D. 529, 552 (C.D. Cal. 2011) ............................................................ 19

*Siles v. ILGWU Nat'l Retirement Fund*,

    783 F.2d 923, 930 (9th Cir. 1986)................................................................... 14

*Tria v. Innovation Ventures, LLC*,

    No. CV 11-7135-GW(PJWx), 2013 U.S. Dist. LEXIS 190664, at *21 (C.D. Cal. Feb. 25, 2013).......................................................................................................... 16, 19

*Valentino v. Carter-Wallace, Inc.*,

    97 F.3d 1227, 1234-35 (9th Cir. 1996) ........................................................... 24

*Wal-Mart v. Dukes*,

    564 U.S. 338 at 349-50 (2010)................................................................... 19, 22

*Yamner v. Boich*,

    No. C-02-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *11-12 (N.D. Cal. Sept. 15, 1994) ...................................................................................................................... 19

*Zinser v. Accufix Research Inst., Inc.*,

    253 F.3d 1180, 1186 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir. 2001) ......... 11, 23, 24

1

<u>Other Authorities</u>

2

Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009) ...................................................................................................................... 23

3

Robert H. Klonoff, *The Decline of Class Actions*, 90 Wash. U.L. Rev. 729, 768 (2013). ............. 15

4

<u>Rules</u>

5

Cal Bus. & Prof. Code § 17602(a) ................................................................................. 10

6

Cal Bus. & Prof. Code § 17602(b) ................................................................................. 10

7

Cal. Bus. & Prof. Code § 17602(d) ............................................................................... 10

8

Cal. Bus. & Prof. Code § 17604(b) ............................................................................... 11

9

Cal. Bus. & Prof. Code §§ 17602(a)(3) ......................................................................... 10

10

Cal. Code Civ. P. § 391(b)(3) ........................................................................................ 10

11

Fed. R. Civ. P. 23(a) ............................................................................................. passim

12

Fed. R. Civ. P. 23(b) ............................................................................................. passim

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## I.   INTRODUCTION

This case involves the "My Fitness by Jillian Michaels" ("MFJM") service, operated by Defendant EM Digital, LLC, and the claim by Plaintiff Lisa Friedman ("Plaintiff") that she was charged on a recurring basis a total of $14.99 per month over thirteen (13) months for a total of $194.87, without being advised how to cancel the recurring charges,[1] and supposedly being unable to cancel those charges, in supposed violation of California law. (*See* D-E 22 (FAC) ¶¶ 19-21; Declaration of D. Keith Kelly II. ("Kelly Decl.") ¶ 2, Ex. 2 – Statements of Todd Friedman from Jan. 2018 through Feb. 2019; ¶ 3, Ex. 3 at LF 31 – Cancellation Email). Nonsense.

In fact, Plaintiff was advised how to cancel the MFJM Service, but ignored those instructions and sent requests to cancel (copying her class action attorney husband Todd Friedman) on responses to an email that she knew was not a proper email. (*See* Declaration of Kenneth Lancaster ("Lancaster Decl.") ¶¶ 10, 12; Kelly Decl. Ex. 3 – Friedman Emails; Ex. 4 – Deposition of Lisa Friedman ("Friedman Depo.") 114:6 - 117:22). Plaintiff did not once dispute the $14.99 charge with the credit card company, and admits that it ultimately took her seconds to cancel when she actually tried. (Friedman Depo. 168:5-12; 193:12 – 194:12). This is not surprising as 97% of MFJM customers who have canceled their subscriptions have done so without a problem, and Defendants have received a grand total of zero complaints from any other customer which mirror the Plaintiff's complaint. (Lancaster Decl. ¶¶ 13, 14). As discussed fully below, given her unique circumstances, Plaintiff is certainly not a proper class representative, and Plaintiff fails to make the showing of

---

[1] Ms. Friedman is the wife of Todd Friedman Esq., a notorious class action attorney who frequently works in tandem with Plaintiff's counsel. (Friedman Depo. 197:13-19) A search of the two attorneys on Lexis indicates that they have in the past and currently do work together on numerous cases. *See, e.g., Kim v. Tinder, Inc.*, No. CV 18-03093 JFW (AS), 2019 U.S. Dist. LEXIS 108034 (C.D. Cal. June 19, 2019). He has been the subject of various articles about the concocting of class action lawsuits. *See e.g.* Kelly Decl., ¶ 5, Ex. 5; ¶ 6, Ex. 6.

the elements necessary for class certification.

Specifically, as discussed fully below, Plaintiff manufactured this lawsuit as shown clearly by deposition testimony and the exhibits marked therein. Indeed, as demonstrated by the evidence and testimony obtained during discovery, not only have Defendants complied with the applicable statutes, Plaintiff's actions and circumstances are so unique that she is exceedingly far removed from the typical user of Defendant EM Digital's product. As discussed herein, Plaintiff is unable to show that this litigation is appropriate for class certification. As such, Plaintiff's Motion for Class Certification should be denied in full.

Despite Plaintiff's argument to the contrary, this case presents a clear-cut example of why courts uniformly require plaintiffs to satisfy all four prerequisites of Fed. R. Civ. P. 23(a) and require plaintiffs to fall within one of the categories set forth in Fed. R. Civ. P. 23(b) in order to bring an action on behalf of a class of persons. Plaintiff's motion fails to establish any of the above points. Although there are multiple reasons why this class certification is inappropriate, a primary reason for denying class certification is due to Plaintiff's unique and atypical experience with the MFJM service. Her subscription to, use of, and communication with the service each present individualized issues that predominate over any alleged common issues between her and the putative class.

Plaintiff's description of the potential class is widely over encompassing and fails to take into account the reality of the MFJM service. California consumers can, and do, sign up for the MFJM service across several platforms, including the MFJM website, Apple's iOS App Store, and the Google Play Store. (Lancaster Decl. ¶ 6) Plaintiff for instance, signed up via the MJFM website during a New Years' promotional period. (*Id.* ¶ 11; *See also* Friedman Depo. 38:20-23; 130:3-19).

When Defendants removed this case to federal court, there were a total of 4,852 California subscribers across three separate platforms: 1,153 through the website; 3,212 through the Apple App Store; and 487 through the Google Play Store.

(Lancaster Decl. ¶ 15). Each of these individuals goes through a separate and distinct process when registering for the MFJM service, which makes each experience unique and individualized to that consumer. (*Id.* ¶ 8). Of critical importance is the fact that consumers who sign up through the Google Play Store and Apple App Store do so via their mobile phones <u>entirely through</u> Google and/or Apple, *not* the Jillian Michaels website. (*Id.* ¶ 7). These individuals are entirely different from those that sign up via the website because: (1) they agree to a separate set of terms and conditions as set forth by Google or Apple; (2) they access and utilize the MFJM service exclusively through the Google or Apple mobile apps; (3) they must cancel their subscription directly via Google or Apple; and (4) they are charged for their subscription by Google or Apple. (*Id.* ¶¶ 7, 8). Mobile users make up an overwhelming majority of the California residents who used the MFJM service: 76.24 percent (3,699 / 4,852 = 0.76236). (*Id.* ¶ 15)

In addition to the multiple platforms through which a consumer can utilize the MFJM service, Defendants are constantly optimizing the MFJM interface, offering promotional rates, and tweaking the language that appears on the website and e-mails to consumers. (*Id.* ¶ 5). As such, individuals who sign up during a promotional period, such as Plaintiff, are not presented with uniform experiences sufficient for class certification. This point is highlighted by the fact that only twenty-nine (29) other monthly users registered for the MFJM service during the New Years' promotional during which Plaintiff signed up. (*Id.* ¶ 11). In short, the subscription language, charges, cancellation, and communications with each potential and existing consumer vary such that an intensive individual inquiry is required. (*Id.* ¶ 5) This fact alone prohibits class certification.

## II.   STATEMENT OF FACTS

Defendant EM Digital's MFJM service launched on or around January 1, 2017, as a personalized meal plan and workout service that can be tailored to the specific schedules, goals, and desired intensity of each consumer. (Lancaster Decl. ¶ 3).

Consumers can sign up for and access the MFJM service through the website at https://wwwjillianmichaels.com, iOS at the Apple App Store, or Android at the Google Play Store. (*Id.* ¶ 6).[2] As mentioned above, at the time Defendants removed this action to the Central District of California, there were a total of 4,852 past and present subscribers: 1,153 via the website; 3,212 via the Apple App Store; and 487 via the Google Play Store. (*Id.* ¶ 15).

Depending on the date and method in which a customer subscribed, the user was presented with different sign-up processes. In fact, at least six (6) different homepages, or "banner" screens have appeared on the website from the beginning of 2017 to the present. (Lancaster Decl. ¶ 5; Kelly Decl., ¶ 7, Ex. 7). Even today, Defendant EM Digital—who manages and operates the MFJM website—is constantly working on the design interface to improve its appearance and in a good-faith attempt to enhance both consumer understanding and satisfaction. (Lancaster Decl. ¶¶ 4, 5).

## A. PLAINTIFF LISA FRIEDMAN'S UNIQUE EXPERIENCE

As stated in Plaintiff's Motion for Class Certification (the "Motion") and Lisa Friedman's Declaration in Support of Plaintiff's Motion for Class Certification ("Friedman Decl."), Plaintiff signed up for the MFJM service in January 2018. (*See* D.E. 29, 4-5; 29-7, ¶ 4). From December 26, 2017, through January 31, 2018, Defendants ran a "New Year New You" promotion, which provided a discount on annual subscriptions to the MFJM service. (Kelly Decl. ¶ 7, Ex. 7; Lancaster Decl. ¶ 11). During this promotional period, any consumer that visited the website saw the same banner page. (*Id.*) On this page the "7-Day Free Trial! Cancel Anytime" language was presented clearly and conspicuously. (*Id.*) In addition, set aside at the bottom of the banner page was the language "Regular price $99.99 for 12 months.

---

[2] The website is more limited than the mobile app. For example, the website provides access to the consumer's account and meal planning, but website consumers must download one of the mobile apps and sign in using their website log-in information in order to access all of the workout videos. Lancaster Decl. ¶ 12.

Recurring fees based on promotional price. Subscriptions are in U.S. dollars." (*Id.*) This language was clearly presented to each consumer and was not buried—in fact, only 22 other words appear on the entire banner page. (*Id.*)

Plaintiff's testimony with respect to her subscription process is, at best, conflicting. At times, Plaintiff states that she only recalls seeing the "seven-day free trial" language and that she could cancel if she did not like the service. (Friedman Depo. 67:7-24). Plaintiff also admits that she *did* notice the subscription lengths—monthly, quarterly, and yearly—when she signed up, but did not pay much attention to these subscription lengths because she only signed up for the free trial. (*Id.* 48:4-9). When asked whether she saw the monthly subscription language when registering, Plaintiff testified, "I don't know because, from my point of view, it didn't really matter." (*Id.* 58:16-23). Despite this testimony, Plaintiff is well aware that "all workout sites" require users to enter credit card information and that, unless the user cancels, the credit card "probably gets charged." (*Id.* 49:13-18; 58:8-9). Plaintiff does not dispute that she entered the credit card information which is billed to her attorney husband, Todd Friedman. (Kelly Decl. ¶ 2, Ex. 2). Plaintiff additionally testified that, "why I'm here is not about - - I have no problem that I paid money for something. I had just asked for it to stop. That's why we're here." (Friedman Depo. at 100:6-8). Fatal to Plaintiff's Motion, it does matter. Plaintiff may not willfully close her eyes in order to later argue that she did not see the clearly expressed terms and language.

Plaintiff's claim that she only signed up for a free trial is admittedly false. At all times, the MFJM service has <u>never</u> had the option to solely sign up for a free trial. (Lancaster Decl. ¶ 9). In fact, all potential MFJM consumers, including Plaintiff, access the same screen where they must affirmatively click on their preferred subscription length, which states that the subscription will begin following their free trial. (*See* D.E. 29-4 – Screenshot of MFJM Website Subscription Acceptance).

Next, Plaintiff repeatedly claims that she never received the welcome e-mail upon subscribing. (*See* Friedman Depo. 42:21; 106:13-25; 151:13-14). Plaintiff even

claims that she checked her spam folder for the e-mail. (*Id*. 96: 4-15). This e-mail, which was and is provided to each and every subscriber regardless of whether they subscribed via the website, iOS, or Android, clearly and plainly provides its recipients with links and directions to cancel the subscription. (Lancaster Decl. ¶ 10). Tellingly, Plaintiff's statement is admittedly false: Defendants' records show that she was, in fact, sent the e-mail. (*Id*. ¶ 12; Kelly Decl. ¶ 9, Ex. 9**).** Not only did Plaintiff receive the welcome e-mail, she undeniably received each and every billing e-mail sent by EM Digital's automatic system. (Lancaster Decl. ¶ 12).

Although she does not specifically recall, Plaintiff testified that she would have either logged into her account via the website immediately upon subscribing or at least within a few days of doing so. (Friedman Depo. 51: 7-23). Yet again, Plaintiff's testimony is demonstrably false. Once Plaintiff successfully completed the subscription process, she was automatically logged into her account via the website. (Lancaster Decl. ¶ 12). In order to access the workout videos, however, Plaintiff needed to download one of the apps and use her account information to sign in. (*Id*.) Defendants' records indicate that <u>Plaintiff never downloaded the mobile app in order to do so</u>. (*Id*.) During this time, Plaintiff was on the page where she could have easily cancelled her subscription, yet she chose not to. (*Id*.)

Plaintiff admits that she knew that she could cancel her subscription during the free trial period to avoid a charge, but never attempted to do so. (Friedman Depo. at 58:8-9). Instead, Plaintiff waited until she had received an automated e-mail relating to billing. (Kelly Decl. ¶ 3, Ex. 3 at LF 15). Plaintiff responded to this e-mail by e-mailing back "please cancel[.]" (*Id*. at LF 16) However, Plaintiff admits that she never went to the website in an attempt to cancel or otherwise. (Friedman Depo. 64: 13-14). This behavior went on for months.[3]

---

[3] During that time, Plaintiff frequently copied her class action attorney husband, Todd Friedman, on these e-mails. <u>*See, e.g.,*</u> Kelly Decl. ¶ 2, Ex. 2 at LF17, LF 19, LF 20-

Plaintiff testified that she was very, very upset by these charges but her actions indicate the opposite. (*Id*. 118: 13-17). When asked why she did nothing more than send a brief e-mail in response to what was clearly an automated payment confirmation e-mail, Plaintiff was only able to respond with "I can't answer. I guess I'm - - I'm - - it's like I said, I'm very, very, very busy." (*Id*. 117:17-18). After being charged a total of approximately $90.00 over the course of six months, which, again, she claims made her very upset, instead of reaching out to the help center, a link to which is located at the bottom of each and every MFJM webpage, or logging into the website and clicking on her account link, which would allow her to cancel, Plaintiff decided to go through the detailed and time-consuming process of filing a lawsuit. Even after her lawsuit was filed, Plaintiff continued to respond to Defendants' monthly automated billing e-mail – sometimes copying her class-action attorney husband – seemingly expecting a different result. (Kelly Decl. ¶ 2, Ex. 2).

Finally, Plaintiff eventually was able to follow the very simple instructions and cancel her subscription on her own, over 13 months later in February 2019. (Kelly Decl. ¶ 2, Ex. 2 at LF31). When asked how she was able to do so, Plaintiff admitted that she went to her account, selected "cancel order," and hit "cancel" under the "subscription" tab. (Friedman Depo. at 101:17-25). This is not surprising, considering that over 97% of individuals who decide to cancel their MFJM service are able to do so without requesting any assistance. (Lancaster Decl. at ¶ 13). Of the 3% that do request help, the vast majority of these individuals contact assistance for help with the Apple App Store or Google Play Store. (*Id*.) Even then, those that do require additional help are quickly assisted, provided that they seek assistance in the manner clearly provided by the website.[4] (*Id*.)

---

25, LF 28-31.

[4] Importantly, because Defendants only enter into agreements with individuals who sign up via its website, Defendants are typically only able to offer cancellation

## B. OTHER USER EXPERIENCES

Although Plaintiff was presented with a unique MFJM service experience due to the timing of her registration, had she decided to read the information provided to her, she would have seen that all relevant auto-renewal and cancellation information was clear and conspicuous. The same is true for all other users of the MFJM service. Should a consumer decide to subscribe through the website, they must click the 'Get Started' tab. (Kelly Decl. ¶ 8, Ex. 8 at EM 255). Conversely, if a consumer signed up through an app, they must click on one of the two other tabs prompting the consumer to download MFJM on the Apple App Store or on Google Play.[5] (*Id.*)

Upon clicking the 'Get Started' tab, the consumer is directed to a 3-step subscription page that first required each consumer to sign in by creating their account, which involved the consumer entering a valid e-mail address and creating and confirming their MFJM password. (Kelly Decl. ¶ 11, Ex. 11). Once the consumer successfully created an account by clicking the 'Create Account' tab, they are taken to the second step of the subscription process where they were required to choose their subscription length (*i.e.* monthly, yearly, etc.). (*Id.*) Again, the recurring charges are made explicitly clear to the consumer and the consumer affirmatively consents to such charges by clicking one (1) of the three (3) subscription length boxes available. Each subscription length box lists the duration of the subscription and the corresponding fee that will be charged per duration chosen. (*See* D.E. 29-4 - Screenshot of MFJM Website Subscription Acceptance). The "1-month" subscription has the following language below: "$14.99/mo. (USD) after 7-day free trial." (*Id.*)

---

assistance to their website consumers. Those that sign up via the Apple App Store or Google Play Store must cancel with their respective mobile app company. (Kelly Decl., ¶ 10, Ex. 10).

[5] Of critical importance to this Motion, users that sign up through the Apple or Google mobile apps conduct the entire sign up experience, including payment and acceptance of terms and conditions, through that respective app store. (Lancaster Decl. at ¶ 6)

After the consumer affirmatively clicks on and thereby selects their subscription plan, they are again required to confirm and acknowledge the recurring subscription that they are choosing by clicking the 'Choose and Continue' tab. (*Id.*) Only once the consumer consents by clicking on the 'Choose and Continue' tab are they directed to the third and final step in the subscription process, the payment section. This page requires the consumer to affirmatively enter their credit card information. (*Id.*) Above the payment section, the webpage clearly identified the e-mail address, subscription price, and duration chosen on the previous pages for the consumer's final review. (*Id.*) After the consumer enters in their credit card information and reviews the subscription details, they are then required—for a third time—to affirmatively acknowledge the subscription plan, duration, and the price charged based on the respective duration chosen by clicking on the "Subscribe for $[price]/[duration]" box. (*Id.*) Plaintiff's own exhibits in this case highlight the transparency of the subscription process and the repeated affirmations that a potential consumer must provide when subscribing.

At the bottom of each and every page of the subscription process is a section titled "Customer Support." (Kelly Decl. ¶ 12, Ex. 12). This section contains a "Get Help" link for consumers who have questions and also provides the following language: "To avoid being charged after starting a trial, per our user terms of use (see Sec. 23), you must cancel the trial before expiration. To cancel a trial or subscription please follow the instructions here. Thank you." *Id.*

Thus, "prior to the completion of the initial order" as required by Cal. Bus. & Prof. Code § 17602(d), all consumers are informed in a number of clear and conspicuous ways of the continuous service offer terms and the recurring subscriptions. Cal Bus. & Prof. Code § 17602(a)-(d). Furthermore, consumers, including Plaintiff, affirmatively consented to these offer terms no less than three separate times throughout the subscription process in accordance with Cal. Bus. & Prof. Code § 17602(a)(2). Once a user consented to and signed up for the MFJM

service, they were immediately sent a "Welcome" e-mail. (*See* D.E. 29-6). This short, one-page e-mail confirms that they have begun their subscription and further informs website subscribers that they "can easily cancel your trial or subscription by going to your Account and selecting Cancel under the Subscription tab." (*Id*.) The e-mail also provides a link for further questions about how to cancel. (*Id*.) This e-mail, taken together with all of the other information provided to consumers during the subscription process, clearly satisfies the acknowledgement requirement and highlights the frivolity of this lawsuit.[6] Cal. Bus. & Prof. Code §§ 17602(a)(3), (d)(1).

Irrespective of Defendants' compliance with the provisions of the ARL, substantial issues remain that make certification of the proposed class improper. As mentioned above, consumers see different text, prices, acknowledgements, and terms depending on how they choose to access the MFJM service. In addition, consumers that subscribed through the Apple App Store or Google Play Store enter into separate agreements with those companies, who charge them and in turn pay EM Digital, as is the case for every mobile app.[7] (Lancaster Decl. ¶¶ 7, 8). For these reasons alone, class certification is improper.[8]

---

[6] Pursuant to Cal. Code Civ. P. § 391(b)(3), a vexatious litigant is an individual who "repeatedly files unmeritorious motions, pleadings, or other papers." Here, Plaintiff, likely alongside her notoriously litigious husband, is engaging in such vexatious litigation. Plaintiff signed up for the MFJM service knowing fully that the monthly subscription she chose would, in fact, charge her monthly. In an attempt to drum up needless litigation, pressure Defendants into a quick settlement, and waste the resources of Defendants and this Court, Plaintiff purposely did not cancel her subscription—going so far as to never even download the mobile app or contact any of the easily accessible links that would assist her in cancelling.

[7] Every consumer across all platforms receives the MFJM welcome e-mail, and that e-mail also informs the consumer that "[f]or Apple and Google subscriptions you will need to go through their app stores to cancel the trial or subscription." (D.E. 29-6).

[8] Here, both the UCL and CLRA causes of action alleged by Plaintiff have a good-faith defense. Importantly, even if the Court finds that Defendants were in a technical

## III.   LEGAL STANDARD

"Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011); citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir. 2001).

> Rule 23(a) requires the parties seeking class certification to establish: (1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims are typical of the class (typicality); *and* (4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation).

*Id.*; citing Fed. R. Civ. P. 23(a) (emphasis added). "[A] preliminary inquiry into the merits of a suit . . . is sometimes necessary to make a meaningful determination of class certification issues." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 588 (9th Cir. 2010). Indeed, the Supreme Court requires district courts to conduct a "rigorous analysis" of each Rule 23(a) prerequisite to determine if they have been satisfied before certifying any class action. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). Plaintiff is not required to make a *prima facie* showing of liability,

---

violation of the ARL statute, on which Plaintiff rests her entire case—and Defendants adamantly deny—Defendants are still afforded a good-faith defense to the claims asserted. Specifically, Pursuant to § 17604(b), "**[i]f a business complies with the provisions of this article in good faith, it shall not be subject to civil remedies.**" Cal. Bus. & Prof. Code § 17604(b). "**This safe harbor, if successfully proven, is an absolute bar to Plaintiff's recovery on the UCL cause of action.**" *See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 188 (Cal. 1999) (good faith sales allowed under statute cannot be unfair or unlawful under the UCL). (Emphasis added). Based on Defendants' efforts to make its consumers aware of the subscription terms, Defendants certainly meet the good-faith safe harbor.

but must present "facts sufficient to satisfy the Rule 23(a) elements" to meet her burden. *See Dukes*, 603 F.3d at 599. Plaintiff has failed to do so here.

Only if the court is "fully satisfied" with a plaintiff's Rule 23(a) requirements will it analyze whether the plaintiff has also fully satisfied their Rule 23(b) requirements. *See In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*, 277 F.R.D. 586, 594 (S.D. Cal. 2011). Here, Plaintiff attempts to certify a class under both Rule 23(b)(2) and (b)(3). Rule 23(b)(2) "requires [a] showing that the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." *Dukes*, 603 F.3d at 615 (quoting Fed. R. Civ. P. 23(b)(2)). Conversely, a plaintiff seeking certification under Rule 23(b)(3) must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As is shown below, Plaintiff fails to meet this burden.

## IV.   ARGUMENT

The argument below focuses on the glaring deficiencies in Plaintiff's proposed class with respect to ascertainability, numerosity, typicality, and adequacy of representation. Next, Defendants discuss additional flaws with Plaintiff's commonality and predominance. As a result of the defects in Plaintiff's individual facts and claims, Plaintiff cannot satisfy the elements necessary for class certification.

### A. Plaintiff's Proposed Class is Not Ascertainable.

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking certification must demonstrate that an identifiable and ascertainable class exists." *Otto v. Abbott Labs., Inc.*, No. 5:12-cv-01411-SVW-DTB, 2015 U.S. Dist. LEXIS 174945, at *4 (C.D. Cal. Sept. 29, 2015) (*quoting Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. May 4, 2009)). "A class is ascertainable if it is administratively feasible for the court to determine whether a particular individual is

a member using objective criteria." *Id.*

Here, Plaintiff's proposed class definition is vague and overbroad because it improperly includes both potentially injured and completely uninjured consumers. "A class definition should be precise, objective, and presently ascertainable." *In re Autozone, Inc.*, 289 F.R.D. 526, 545 (N.D. Cal. Dec. 21, 2012) (*quoting O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)). When a class "includes those who have not been harmed [it] is both imprecise and overbroad." *Id.*; *see also Mazur*, 257 F.R.D. at 567 (same). Indeed, the overwhelming majority of MFJM consumers—both in and outside of California—affirmatively acknowledged the conditions and use either the website or apps without issue or complaint. These consumers are not injured and therefore have no claim. Atypical subscribers like Plaintiff, who willfully ignore the terms and conditions with the goal of pursuing litigation, are unique outliers.

Furthermore, "[t]o be ascertainable, the description of the class must be definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member' before trial." *Newton v. Am. Debt Servs.*, No. C-11-3228 EMC, 2015 U.S. Dist. LEXIS 74626, at *16 (N.D. Cal. June 9, 2015). "Class definitions which require the court to determine the merits of every individual's claim to determine if they are within the class generally do not satisfy this [ascertainability] requirement." *Rodriguez v. Gates*, No. CV 99-13190 GAF (AJWx), 2002 U.S. Dist. LEXIS 10654, at *33 (C.D. Cal. May 30, 2002).

Plaintiff erroneously contends that the putative class is ascertainable because "[a]ll members of the Class must have signed up for Defendants' MFJM service and Defendants have provided the Court with information about the ease by which Class members could be ascertained because Defendants maintain records about consumers." (D.E. 29 at 14). Defendants providing the number of total MFJM consumers in California is not in and of itself sufficient to determine ascertainability. While the number of consumers is known, the fact remains that these consumers

signed up across three separate platforms, two of which (Apple and Google) require consumers to enter into separate contracts with those entities, who in turn charge the consumer directly. (Lancaster Decl. ¶¶ 8, 9). Further, consumers' experience with the service differs from person to person based on a variety of factors, including the date that they subscribed, the method and service they subscribed to, and the conditions read while subscribing. (*Id.* ¶ 5).[9] Plaintiff has not even attempted to segregate out these differences, instead choosing to rely on an improper and vastly overbroad definition. Plaintiff has thus failed to meet her burden to show ascertainability.

## B. Plaintiff's Proposed Class Fails to Satisfy Numerosity.

Plaintiff argues that she has satisfied the numerosity requirement set forth in Fed. R. Civ. P. 23(a)(1) simply because "there are around 4,852 Class members" and "thousands of separate actions would be economically and judicially impracticable." (D.E. 29 at 14). This fact alone is insufficient because evidence of <u>possible</u> membership is not equivalent to evidence of <u>actual</u> numerosity. *See Siles v. ILGWU Nat'l Retirement Fund*, 783 F.2d 923, 930 (9th Cir. 1986). In *Siles*, plaintiff attempted to satisfy the numerosity requirement only on the basis that there were 31,000 employees covered by the plan that lost their jobs during the time period. *Id*. The Ninth Circuit affirmed the district court's granting of summary judgment, finding that numerosity was not satisfied where plaintiff presented no additional evidence to support that number. *Id*.

In recent years, some circuits have given the numerosity requirement "real

---

[9] If the MSJM user registers through the Apple Store or Google Play Store, as opposed to signing up through the website, as Plaintiff did, the terms and conditions and payment processes are unique to those services. (Lancaster Decl. ¶¶ 6-8) Depending on the date that the individual subscribed for the service, regardless of application, they could be presented with different promotional rates and packages. For instance, users who signed up on June 3, 2017, were offered a $9.99/month subscription rate while users who signed up during the "New Year New You" promotion were offered 30% off annual subscriptions. (Kelly Decl. ¶ 7, Ex. 7 at EM 208-214)

teeth." Robert H. Klonoff, *The Decline of Class Actions*, 90 Wash. U.L. Rev. 729, 768 (2013). While "Rule 23(a)(1) does not require a plaintiff to offer direct evidence . . . a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 589 (3d Cir. 2012). While Plaintiff limited her proposed class definition to the geographic region of California, she still improperly seeks certification of a putative class of "all California residents who . . . purchased Defendants' 'MFJM' subscription and whose credit cards or debit cards were automatically charged on a recurring basis as part of that subscription . . ." (D.E. 22 ¶ 3) ("FAC"). This definition does not take into account consumers who: signed up on different platforms, were charged by such platforms, and who properly and reasonably understood the recurring nature of their subscription. Plaintiff fits into an extremely small subcategory of users as she was one of only twenty-nine (29) users who signed up for the MFJM service for a monthly description during the "New Year New You" promotional period. (Lancaster Decl. ¶ 11). Users who signed up during this time frame, which only ran from December 27, 2017, through January 31, 2018, were presented with a webpage, rates and promotional offers unique to that offer. (*Id.*) For this reason alone, Plaintiff has not satisfied her numerosity burden.

## C. Plaintiff's Claims are not Typical of the Proposed Class.

Pursuant to Fed. R. Civ. P. 23(a)(3), "[t]he typicality requirement demands the 'claims or defenses of the representative parties are typical of the claims or defenses of the class." *Munoz v. Giumarra Vineyards Corp.*, No. 1:09-cv-00703-AWI-JLT, 2012 U.S. Dist. LEXIS 93043, at *13 (E.D. Cal. July 5, 2012). Generally speaking, "[t]he typicality test is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Amey v. Cinemark USA, Inc.*, No. 13-cv-05669-WHO, 2018 U.S. Dist. LEXIS

140156, at *13 (N.D. Cal. Aug. 16, 2018) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

As the Ninth Circuit has stated, "[class] representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). That being said, typicality is not satisfied where a class representative's claims "threaten to become the focus of the litigation." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010); *see Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("Class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to [her].");  *see also Tria v. Innovation Ventures, LLC*, No. CV 11-7135-GW(PJWx), 2013 U.S. Dist. LEXIS 190664, at *21 (C.D. Cal. Feb. 25, 2013) ("defenses unique to the proposed class representative can make that individual (or entity) unsuitable as a representative.").

Here, Plaintiff's experience and claims are not typical of the alleged class. According to Plaintiff's Motion, typicality is "easily satisfied" simply because "Defendants' conduct applied equally to all . . . subscribers" and all "putative Class members suffered the same harm in virtually the same manner . . . ." (D.E. 29 at 17). However, Plaintiff is not entitled to rely on such a bare-bones assertion of typicality to satisfy her burden. Moreover, Plaintiff's claims and experience are rife with the exact type of unique differences that are clearly not co-extensive with that of the class she purports to represent.

Principal among these differences is the fact that Plaintiff did not file suit because of any deceptive advertisement or alleged failure by Defendants to make the automatic renewal language clear, but because Plaintiff felt cancelling her subscription was too difficult. (Friedman Depo. 100:5-8 ("And the other thing is, again, why I'm here is not about – I have no problem that I paid money for something. I had just asked for it to stop. That's why we're here."); 128:19-21 ("I decided to file a lawsuit because I didn't feel like it was fair that I was being ignored in my emails.")).

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

In fact, when Plaintiff was asked outright whether she did or did not see "notice" on the website that her credit card would be charged monthly, she responded with the following: "I don't know because, from my point of view, it didn't really matter. I was going to put my credit card in and try it . . ." (*Id*. 58: 16-23). However, the records clearly indicate that Plaintiff did not even use her own credit card to sign up for the service. (Kelly Decl. ¶ 2, Ex. 2). In fact, Plaintiff used her litigious husband's[10] credit card, suggesting that she was not harmed in any way and arguably has no standing to sue. (*Id*.) At a minimum, these facts suggest that Plaintiff is neither a typical member nor an adequate representative of the putative class.

Additionally, Plaintiff repeatedly admits that she subscribed to the MFJM service exclusively on the website platform. (Friedman Depo. 38:22-23; 128:1-12). Of the 4,852 potential opt-in class members, only 1,153 signed up for the MFJM service via the website. (Lancaster Decl. ¶ 15) This figure represents only 23.76% of the class. Plaintiff's entire FAC and Motion attempts to focus around what information she was and was not shown to her before and after she signed up for the MFJM service, but she went through a different subscription process than 3,699 other putative class members (or 76.24%). This difference is significant.

Plaintiff's subscription process and use of the service was atypical, as well. Plaintiff subscribed to the MFJM website service during a limited-time holiday promotional period, was one of only twenty-nine (29) users who subscribed to a monthly subscription during that period, provided contradicting testimony on what she did and did not read and/or notice during her subscription process, and admitted that she paid for the program with her husband's credit card, who as noted previously, is co-counsel with Plaintiff's current counsel in numerous class action litigation.

---

[10] The Court should be aware that Plaintiff's husband has been co-counsel with Plaintiff's counsel on many class action cases, further indicating Plaintiff's likely motive for this vexatious litigation and obvious conflicts.

(Lancaster Decl. ¶ 11; Kelly Decl. ¶ 8, Ex. 8; Friedman Depo. 48:4-9; 49:13-18). Plaintiff indicated that she only "signed up for free trials," (*Id*. 48:8-9), all while acknowledging that, by signing up and providing the credit card information, she subscribed to more than just a free trial. (*Id*. 49:22-24).

Once subscribed, Plaintiff did not make <u>any</u> attempt to cancel until after she was charged for her subscription following the conclusion of her free trial. (*Id*. 108:19 – 109:12).[11] Once Plaintiff signed up for the MFJM service, she never downloaded an app to view the workout videos she purportedly signed up for. When she was charged the agreed-upon monthly fee, Plaintiff only attempted to cancel her subscription once per month by responding to the same automated monthly e-mails over and over again that simply confirming that her payment was received. (Kelly Decl. ¶ 2, Ex. 2). Plaintiff made no attempt to determine whether she was even responding to the appropriate email for cancellation. (Friedman Depo. 114:6 - 117:22) At no time did Plaintiff, nor her husband who was actually paying for the services, attempt to dispute the charges with his credit card company. (*Id*. 42:3-12) Plaintiff admits getting "really upset" about these charges, yet not once did she ever log into her MFJM account and attempt to cancel. (*Id.* 116:20 – 117:18).

Finally, Plaintiff repeatedly claims that she never received the welcome e-mail that contained links to sign in and cancel the account upon subscribing. (*Id*. 42:21; 106:13-25; 151:13-14). Plaintiff even goes as far as stating that she checked her spam folder for the e-mail. (*Id*. 96:4-15). Despite the fact that Defendants' records show

---

[11] Plaintiff's confusion with respect to the MFJM service is further compounded by the fact that Plaintiff admits to "belong[ing] to many other workout sites." (Friedman 69:4). Indeed, Plaintiff goes on to admit that she is a current subscriber to 4 different workout services: "Crunch Live," "Hollywood Trainer Club," "Beachbody," and "The Daily Burn." (*Id*. 53: 1-8). Each of these workout services, like MFJM, offer a free trial period that turns into the recurring subscription length selected by the consumer if not cancelled. As a direct result, Plaintiff was undoubtably aware of this process, which is standard throughout the industry.

that she was sent the e-mail, this claim serves as yet another unique fact highlighting Plaintiff's unsuitability. *See Tria*, 2013 U.S. Dist. LEXIS 190664, at *21 (C.D. Cal. Feb. 25, 2013). Even giving deference to the fact that her claims need not be "substantially identical" to that of other potential members of the putative class, "[t]he Supreme Court made clear in *Dukes* that it is not enough that putative class members 'have all suffered a violation of the same provision of law.'" *Shields v. Walt Disney Parks & Resorts US, Inc.*, 279 F.R.D. 529, 552 (C.D. Cal. 2011) (quoting *Wal-Mart v. Dukes*, 564 U.S. 338 at 349-50 (2010)). Plaintiff's conduct before, during, and after the subscription process is clearly that of a unique and individualized nature and Defendants' defenses to her claims alone show that she is not a typical member of the putative class.

### D. Plaintiff and her Counsel Are not Adequate Representatives.

As a preliminary matter, Defendants incorporate the entirety of their argument against Plaintiff's typicality above into their argument as to why Plaintiff is also an inadequate class representative. *See Yamner v. Boich*, No. C-02-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *11-12 (N.D. Cal. Sept. 15, 1994) ("courts frequently discuss the adequacy and typicality requirements interchangeably"); *see also Amey*, 2018 U.S. Dist. LEXIS, at *17 (N.D. Cal. Aug. 16, 2018).

In order to satisfy her Rule 23(a)(4) prerequisite, Plaintiff must show that she will adequately represent the interests of the class. "Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members." *Shields*, 279 F.R.D. at 554. The Central District has looked at a plaintiff's involvement meeting and discussing the case with their counsel, reviewing the filings, and participation in discovery in determining whether they make an adequate class representative. *Id*. Plaintiff has again failed to satisfy her burden.

First, Plaintiff's credibility is in dispute, to put it mildly. *See Feske v. MHC Thousand Trials L.P.*, No. 11-4124 PSG, 2013 U.S. Dist. LEXIS 37232, at *38-40

(N.D. Cal. Mar. 18, 2013) (a representative party is inadequate "where the representative's credibility is questioned on issues directly relevant to the litigation."). As stated above, Plaintiff's FAC repeatedly asserts that Defendants failed to inform Plaintiff and the putative class about the recurring subscription terms of the MFJM service in accordance with the ARL. (D.E. 22 ¶¶ 32-39). Plaintiff stated in her deposition, however, that "it didn't really matter" whether she did or did not see the automatic renewal terms when subscribing. (Friedman Depo. 58:16-23). This misstatement goes directly to the heart of this litigation and does not reflect the "honesty and candor" required of class representatives. *See Feske*, 2013 U.S. Dist. LEXIS 37232, at *35 (N.D. Cal. Mar. 18, 2013). Plaintiff also willfully ignored website language, (Friedman Depo. 48:4-9; 49:13-18) states that she never received an email that Defendants can definitively show was sent and that is automatically generated for every user, (Lancaster Decl. ¶¶ 10, 11, 12) and declined to ever reach out to customer service for assistance but instead sent repeated emails to the MFJM automated billing email address copying her husband, (Kelly Decl. ¶ 3, Ex. 3) never once attempted to challenge the charges with her husband's credit card company (Friedman Depo. 42:3-12) and has an obviously biased relationship with her counsel who is current co-counsel with her husband on other matters.

Plaintiff's participation and investment in this litigation is obviously questionable. Aside from the fact that Plaintiff did not even sign up for the MFJM service with her own credit card, which directly calls her investment in this litigation into question. Additionally, Plaintiff has failed to adequately participate in this litigation. To start, when presented with a copy of the amended complaint, Plaintiff was unable to state whether she read it before it was filed. (Friedman 85:6-9 ("This one, I don't remember.")). Of greater concern, however, is Plaintiff's lack of participation in the discovery process. *See In re Toys "R" Us – Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 373 (C.D. Cal. 2013) (finding proposed representatives adequate based on their "participat[ion] in

20

the litigation, answering discovery and appearing for deposition."). Here, Plaintiff admits that she did not review certain documents that were produced on her behalf. (Friedman Depo. 161:9-18). Indeed, Plaintiff's counsel admitted to creating documents *for Plaintiff* after Defendants' counsel pointed out that metadata revealed as much. (*Id.*) Furthermore, Plaintiff's responses to interrogatories, requests for admission and requests for production have been exceedingly evasive. This is exactly the type of non-participation that makes a class representative inadequate.

Plaintiff's counsel is also woefully inadequate. Class counsel is inadequate where a conflict exists between them, the named representative, and the proposed class. *See Nunez v. BAE Sys. San Diego Ship Repair, Inc.*, 292 F. Supp. 3d. 1018, 1035 (S.D. Cal. 2017). Given the tangled relationship between Plaintiff's Counsel, Plaintiff, and Plaintiff's class action husband, counsel here is clearly inadequate.

Shortly after Plaintiff was charged in connection with her subscription, Plaintiff began copying her husband, Todd Friedman, on her responses to the monthly subscription confirmation e-mails she received. (Kelly Decl. ¶ 3, Ex. 3). As mentioned previously, the MFJM subscription was paid for by Mr. Friedman. (Kelly Decl. ¶ 2, Ex. 2). Although it is unclear to what extent, it does appear that Mr. Friedman has had some involvement in the discovery process of this litigation, including document production. (Freidman Depo. 34:22 - 35:8). When asked whether Mr. Friedman and Plaintiff's counsel have ever worked together, Plaintiff admitted that they had. (*Id.* 197:9-19). A search of the two attorneys on Lexis indicates that they have in the past and currently do work together on numerous cases. *See, e.g., Kim v. Tinder, Inc.*, No. CV 18-03093 JFW (AS), 2019 U.S. Dist. LEXIS 108034 (C.D. Cal. June 19, 2019); *In re Volkswagen "Clean Diesel" Mktg.*, 264 F. Supp. 3d (N.D. Cal. 2017); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053 (C.D. Cal. 2013). In fact, Mr. Freidman has also *represented* Plaintiff's Counsel in litigation. *See Kristensen v. Tip Top Capital, Inc.*, No. CV 18-2103 FMO (ASx), 2018 U.S. Dist. LEXIS 90237 (C.D. Cal. May 30,

2018). Plaintiff admits that she met her counsel through her husband and that she knew him before the lawsuit. (Friedman Depo. 30:1-12). Given this conflicted relationship between Mr. Friedman, Plaintiff's Counsel, and Plaintiff, Plaintiff's Counsel cannot adequately pursue the interests of the class.

## E. Plaintiff's Proposed Class Lacks Commonality and Predominance.

In order to satisfy Fed. R. Civ. P. 23(a)(2), Plaintiff must show that "there are questions of law or fact common to the class." "[C]lass certification is appropriate only where the plaintiffs' claims rest on a common contention whose truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Parsons v. Ryan*, 754 F.3d 657, 681 (9th Cir. 2014) (internal quotations omitted). Such a finding "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 350 (quoting *Falcon*, 457 U.S. at 152 (1982)). Because any well-pled complaint necessarily raises common questions, courts must instead focus a commonality inquiry on whether the class is able to generate common answers that may resolve the litigation. *Id*.; *see* Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009) ("What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities . . . have the potential to impede the generation of common answers.").

As this Court has also noted, "the commonality and typicality requirements of Rule 23(a) tend to merge." *Gossoo v. Microsoft Corp.*, No. CV 13-2043 SVW, 2013 U.S. Dist. LEXIS 149677, at *4 (C.D. Cal. Oct. 9, 2013). As a result, even if common questions exist, no class can be certified unless the common questions will predominate over the individual ones. Importantly, "[t]he *predominance* requirement is far more stringent than the "commonality" requirement of Rule 23(a)(2)." *Konik v. Time Warner Cable*, No. CV 07-763 SVW (RZx), 2010 U.S. Dist. LEXIS 136923, at *12 (C.D. Cal. Nov. 24, 2010) (emphasis in original).

Plaintiff's Motion claims that "the main legal issues are all class issues" and that "[t]here are no individual issue [sic] here." (D.E. 29 at 22). This argument plainly fails under both a commonality and predominance standard because individual issues predominate in determining the language shown and terms consented to by each consumer based on their chosen platform. The *Gossoo* Court determined that class certification was inappropriate due to the "variety of materially different experiences at Microsoft stores." 2013 U.S. Dist. LEXIS 149677, at *12 (C.D. Cal. Oct. 9, 2013). This case is even further removed: while the putative class in *Gossoo* would have had different experiences at different stores owned by the same company, the putative class here had the option of subscribing to the MFJM service with three separate companies and three different processes: Defendants, Apple, and Google.

Furthermore, the subscription advertisements and process has evolved from the beginning. As a result, what a putative class member may have seen or been required to explicitly acknowledge in January 2018 is different than what another putative class member may have seen in February 2018 to the present. Clearly the variety of individualized issues involved across three separate platforms cannot provide the common answers required to satisfy commonality. Even if Plaintiff was able to somehow overcome the commonality hurdle, these individual issues would defeat Rule 23(b)(3) certification on manageability alone. *See In re N. Dist. Of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982) ("problems of commonality merge into problems of management.")

### F. Rule 23(b)(2) Certification is not Appropriate.

Plaintiffs seeking certification pursuant to Fed. R. Civ. P. 23(b)(2) are required to show that the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate." Fed. R. Civ. P. 23(b)(2). Importantly, "Rule 23(b)(2) is not appropriate for all classes and does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Id.*; *see Zinser*, 253 F.3d at 1195 ("Class

certification under Rule 23(b)(2) is appropriate <u>only where the primary relief</u> sought is declaratory or injunctive. A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where such relief is <u>merely incidental</u> to the primary claim for injunctive relief.") (citations omitted) (emphasis added). Here, Plaintiff does seek injunctive relief, but it is merely incidental to her request for damages, which she seeks for each of her alleged causes of action. Because she primarily seeks damages, Plaintiff is not entitled to certification pursuant to Fed. R. Civ. P. 23(b)(2).

### G. Plaintiff Cannot Satisfy the Superiority Requirement of 23(b)(3).

Rule 23(b)(3) is frequently broken into two (2) subsections, predominance and superiority. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser*, 253 F.3d at 1189 (9th Cir. 2001). In order to determine superiority, courts consider the factors under Rule 23(b)(3). The fourth factor here, manageability, is the most problematic for Plaintiff. Pursuant to Rule 23(b)(3)(D), courts must consider "the difficulties likely to be encountered in the management of a class action" when determining whether a class action is the superior method of litigation. *Zinser*, 253 F.3d at 1189-92 (citing Fed. R. Civ. P. 23(b)(3)(D)). "[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Id.* (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996)); *see Dalkon Shield*, 693 F.2d at 856. In other words, "[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Id.*

As stated more fully in the typicality argument above, Plaintiff utilized only the website in connection with her MFJM subscription. This represents a tiny fraction of the class she seeks to represent, and—where separate subclasses are not present—has the potential to cause significant difficulty in managing a class action. The other putative members who signed up via other methods were presented with separate

24

screens and even entered into separate contracts with those platforms. While "individualized issues relat[ing] only to damages" do not weigh against effective management of a class action, issues such as these likely do. *Munoz*, 2012 U.S. Dist. LEXIS 93043, at *109 (E.D. Cal. July 5, 2012).

In *Coleman v. Theranos, Inc.*, the Court held that individual actions—rather than a class action—was appropriate where: "(1) class members' claims [were] viable individually; (2) the likelihood of individual reliance-based claims undermine[d] the efficiency of class treatment; [and] (3) uncertainties remain[ed] regarding the class definition, typicality and predominance, and class counsel." 325 F.R.D. 629, 650 (N.D. Cal. 2018). As the court first pointed out, "class certification is not necessary to allow individual members to pursue their claims." *Id*. at 651. Here, where three (3) clear subclasses—website-based subscriptions, Apple App Store subscriptions, and Google Play Store subscriptions—persist, each of these classes may prefer to litigate their action individually. Each of these "subclasses" are able to do so, and certain differences in the MFJM subscription process may differentiate substantially enough to require it. Next, like *Coleman*, several causes of action have a reliance requirement. While Plaintiff's UCL and FAL causes of action only require reliance on behalf of the named plaintiffs, Plaintiff's CLRA cause of action requires "actual reliance of all class members." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969 n. 25 (S.D. Cal. 2012); *See Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1292 (Cal. Ct. App. 2002). As the *Coleman* court stated, "[t]his weighs for permitting individual control over all claims." *Coleman*, 325 F.R.D. at 651. Finally, as stated above, numerous uncertainties and differences remain with respect to the class definition, typicality, and adequacy of representation.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied.

1    Dated: August 23, 2019              Respectfully Submitted,

2

3                                        /s/ Richard S. Busch
4                                        RICHARD S. BUSCH
                                         KING & BALLOW
5                                        Attorney for the Defendants
6                                        JILLIAN MICHAEL, EM DIGITAL, LLC
                                         and EMPOWERED MEDIA, LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION