Richard S. Busch, SBN 319881
*rbusch@kingballow.com*
Paul H. Duvall, SBN 73699
*pduvall@kingballow.com*
D. Keith Kelly, II SBN 323469
*kkelly@kingballow.com*
**KING & BALLOW**
1999 Avenue of the Stars; Suite 1100
Century City, CA  90067
Telephone:  424.253.1255
Facsimile: 888.688.0482


Attorneys for Defendants
JILLIAN MICHAELS, EM DIGITAL,
LLC and EMPOWERED MEDIA, LLC


## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LISA FRIEDMAN, individually and on behalf of herself and all others similarly situated,<br><br>          Plaintiffs,<br><br>vs.<br><br>JILLIAN MICHAELS, an individual; EM DIGITAL, LLC, a Florida Limited Liability Company; EMPOWERED MEDIA, LLC, a California Limited Liability Company; and DOES 1-100, inclusive,<br><br>          Defendants. | Case No.: 2:18-cv-09414-GW-SS<br><br>**CLASS ACTION**<br><br>**Honorable George H. Wu**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS JILLIAN MICHAELS, EM DIGITAL, LLC AND EMPOWERED MEDIA, LLC'S MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS AGAINST PLAINTIFF LISA FRIEDMAN**<br><br>Date:              October 3, 2019<br>Time:             8:30 a.m.<br><br>Complaint Filed:  August 20, 2018<br>Removed:           November 5, 2018<br>Trial Date:        March 2, 2020 |

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................... 1

II.     BACKGROUND ..................................................................................... 2

    A.   The Initial MFJM Sign-Up Page for Plaintiff.......................... 3

    B.   Plaintiff's Sign-Up Process...................................................... 4

    C.   Confirmation of Sign-Up .......................................................... 6

    D.   Plaintiff's Cancellation "Attempts" ......................................... 7

III.    PROCEDURAL HISTORY .................................................................... 9

IV.     LEGAL STANDARD ............................................................................ 9

V.      PLAINTIFF DOES NOT MEET THE REASONABLE CONSUMER
    STANDARD. ........................................................................................ 10

VI.     DEFENDANTS' GOOD FAITH SAFE HARBOR ............................. 11

VII.    PLAINTIFF CANNOT SHOW A VIOLATION OF THE UCL. ....... 12

    A.   Technical Violations of the ARL Do Not Automatically Trigger
        a Violation of the UCL............................................................ 13

VIII.   PLAINTIFF CANNOT SHOW A VIOLATION OF THE ARL ......... 13

    A.   The Terms Were Clear and Conspicuous. .............................. 14

    B.   Plaintiff Gave Her Affirmative Consent ................................ 15

    C.   Plaintiff was Provided with an Acknowledgement................. 17

    D.   The MFJM Service is not an Unconditional Gift .................. 17

IX.     NO VIOLATION OF THE FAL............................................................ 18

    A.   Plaintiff did not rely on the MFJM Advertisement. .............. 19

    B.   The Auto-Renewal MFJM Advertisement is Not False, Untrue,
        or Misleading. ........................................................................ 20

X.      NO VIOLATION OF THE CLRA......................................................... 21

XI.     PLAINTIFF LACKS STANDING FOR PROSPECTIVE

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ

INJUNCTIVE RELIEF ........................................................................23

XII.  DEFENDANTS JILLIAN MICHAELS AND EMPOWERED MEDIA

SHOULD BE DISMISSED ...............................................................24

XIII.  CONCLUSION ..................................................................................25

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.,*
     477 U.S. 242 (1986) ...................................................................................9

*Bates v. United Parcel Service, Inc.,*
     511 F.3d 974 (9th Cir. 2007)..................................................................24

*Bell Atlantic Corp. v. Twombly*,
     550 U.S. 544 (2007) .................................................................................23

*Brockey v. Moore,*
     107 Cal. App. 4th 86 (Cal. Ct. App. 2003) ..........................................20

*Caiz v. Roberts*,
     382 F. Supp. 3d 942 (C.D. Cal. 2019).....................................................9

*Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
     20 Cal. 4th 163 (Cal. 1999) ...................................................................11

*Celotex Corp. v. Catrett,*
     477 U.S. 317 (1986) .................................................................................9

*Cel-Tech Commc'ns., Inc. v. L. A. Cellular Tel. Co.*,
     20 Cal. 4th 163 (1999)............................................................................11

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
     631 F.3d 939 (9th Cir. 2011).................................................................24

*City of Los Angeles v. Lyons*,
     461 U.S. 95 (1983) .................................................................................24

*Colgan v. Leatherman Tool Group, Inc.,*
     135 Cal. App. 4th 663 (Cal. Ct. App. 2006) ............................19, 20

*Connors v. Nat'l Transp. Safety Bd.*,
     844 F.3d 1143 (9th Cir. 2017).................................................................11

iv

*Daniel v. Ford Motor Co.*,

    806 F.3d 1217 (9th Cir. 2015)..........................................................................19

*Davis v. HSBC Bank*,

    691 F.3d 1152 (9th Cir. 2012).........................................................................21

*Freeman v. Time, Inc.,*

    68 F.3d 285 (9th Cir. 1995)..............................................................................10

*Hauk v. JP Morgan Chase Bank United States*,

    552 F.3d 1114 (9th Cir. 2009)..........................................................................11

*Herrejon v. Ocwen Loan Servicing, LLC*,

    980 F.Supp. 2d 1186 (E.D. Cal. 2013).............................................................12

*Hill v. Roll Internat. Corp.,*

    195 Cal. App. 4th 1295 (2011).........................................................................10

*Hinojos v. Kohl's Corp.*,

    718 F.3d 1098 (9th Cir. 2013)..........................................................................19

*In re Oracle Corp. Sec. Litig.*,

    627 F.3d 376 (9th Cir. 2010)..............................................................................9

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,

    903 F. Supp. 2d 942 (S.D. Cal. 2012).............................................................19

*Jenkins v. JPMorgan Chase Bank, N.A.,*

    216 Cal. App. 4th 497 (2013)...........................................................................13

*Ladore v. Sony Comput. Entm't Am., LLC*,

    75 F. Supp. 3d 1065 (N.D. Cal. 2014) ............................................................18

*Lavie v. Procter & Gamble Co.*,

    105 Cal. App. 4th 496 (2003)...........................................................................10

*Lopez v. Nissan N. Am., Inc.*,

    201 Cal. App. 4th 572 (2011)...........................................................................11

*Lopez v. Stages of Beauty, LLC*,

307 F. Supp. 3d 1058 (S.D. Cal. 2018) ........................................................ 12

*Orcilla v. Big Sur, Inc.*,

 244 Cal. App. 4th 982 (2016) .............................................................. 13

*Rojas-Lozano v. Google, Inc.,*

 159 F. Supp. 3d 1101 (N.D. Cal. 2016) ............................................... 18

*Tatung Co. v. Shu Tze Hsu*,

 217 F. Supp. 3d 1138 (C.D. Cal. 2016)................................................ 25

*Williams v. Gerber Products Co.*,

 552 F.3d 934 (9th Cir. 2008)........................................................ 10, 19

*Wynn v. Turner*,

 631 F. App'x 483 (9th Cir. 2016).......................................................... 23

## Statutes

Cal. Bus. & Prof. Code § 17500 ...................................................................... 21

Cal. Bus. & Prof. Code § 17601(b) ................................................................ 16

Cal. Bus. & Prof. Code § 17601(c) ................................................................ 14

Cal. Bus. & Prof. Code § 17602(a)(1) ...................................................... 15, 16

Cal. Bus. & Prof. Code § 17602(a)(1)-(3) ..................................................... 13

Cal. Bus. & Prof. Code § 17602(a)(2) ...................................................... 15, 17

Cal. Bus. & Prof. Code § 17602(a)(3) ............................................................ 17

Cal. Bus. & Prof. Code § 17602(d)(1)...................................................... 13, 17

Cal. Bus. & Prof. Code § 17603 ............................................................... 17, 18

Cal. Bus. & Prof. Code § 17604(b) ..................................................... 2, 10, 11

Cal. Bus. & Prof. Code §§ 17200, *et seq.*....................................................... 1

Cal. Bus. & Prof. Code §§ 17500, *et seq.*....................................................... 1

Cal. Bus. & Prof. Code §§ 17600, *et seq.*........................................... 1, 11, 12

Cal. Civ. Code § 1761(a) ............................................................................... 18

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ

Cal. Civ. Code § 1770(a) ........................................................................21

Cal. Civ. Code § 1770(a)(14) ................................................................23

Cal. Civ. Code § 1770(a)(19) ................................................................23

Cal. Civ. Code § 1770(a)(4) ..................................................................21

Cal. Civ. Code § 1770(a)(5) ..................................................................22

Cal. Civ. Code § 1770(a)(9) ..................................................................22

Cal. Civ. Code §§ 1750, *et seq.* .............................................................1

<u>Rules</u>

Fed. R. Civ. P. 56(a) ...............................................................................9

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ

## I.     INTRODUCTION

Plaintiff Lisa Friedman brings this action against Defendants EM Digital, LLC, Empowered Media, LLC and Jillian Michaels ("Defendants") erroneously claiming a string of violations tied into a purported violation of California's Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600, *et seq.* ("ARL").

Plaintiff's First Amended Complaint ("FAC") alleges that - after Plaintiff voluntarily enrolled in the "My Fitness by Jillian Michaels" ("MFJM") service - she was billed for the monthly subscription which she selected without first providing her affirmative consent to be charged in violation of the ARL. (D.E. 22 - FAC - ¶ 33) Plaintiff further alleges that the MFJM service failed to provide her with an acknowledgement of the subscription terms, or information relating to the MFJM subscription cancellation policy in further alleged violation of the ARL. (*Id.* ¶ 39)

As shown conclusively below, the unfounded allegations contained within the FAC are wholly without merit. The uncontroverted facts show that the terms of the MFJM auto-renewal subscription were clear and conspicuous, presented to Plaintiff on multiple occasions prior to her enrollment, and Plaintiff affirmatively agreed to such terms prior to her being charged for the monthly service that she intentionally selected. (Declaration of Kenneth Lancaster ("Lancaster Decl.") at ¶¶ 6-25; Exs. 1- 6) Further, the uncontroverted facts conclusively show that Plaintiff was provided all relevant information relating to the cancellation policy and an acknowledgment of the subscription terms well before she was billed. (*Id.*) As such, there is no ARL violation and consequently no corresponding violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), or California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL").

The undisputed evidence also reveals that Plaintiff's allegations are indisputably unique as Defendants have not received a single complaint in which a MFJM customer stated that the auto-renewal terms were not clear and conspicuous.

(Lancaster Decl. ¶ 36). In fact, approximately 97% of all MFJM users who decide to cancel their subscription are able to do so without contacting MFJM's customer service specialists at all. (*Id.* ¶ 31). Those that do request assistance do so primarily because they either cannot remember their login information or need assistance canceling their subscription through the mobile Apple App Store or Google Play Store, which are not operated by Defendants. (*Id.* ¶ 32).

Defendants have taken numerous steps to make the MFJM terms and conditions, as well as the cancellation policy, simple and easy to comprehend at every step of registration during the user's experience with the MFJM service. (*Id.* ¶¶ 6-25, 35; Exs. 1-3, 5-6) As such, the undisputed testimony and evidence demonstrate that Defendants strived to comply with each and every requirement of the ARL in good faith and therefore should be shielded from any purported technical violation pursuant to Cal. Bus. & Prof. Code § 17604(b) ("**If a business complies with the provisions of this article in good faith, it _shall not_ be subject to civil remedies**.") (Emphasis added.) In sum, there are no genuine issues of material fact preventing this Court from granting Defendants' Motion for Summary Judgment.

Finally, Plaintiff has failed to present any evidence to show that Defendants Empowered Media, LLC and Jillian Michaels are sufficiently involved with the MFJM service to warrant being named as a party to this action. Accordingly, this Court should dismiss these parties from this litigation regardless of any alleged violation by Defendant EM Digital, LLC, the entity who operates the MFJM service.

## II.   BACKGROUND

Defendant EM Digital's MFJM service launched on or around January 1, 2017, as a personalized meal plan and workout service that can be tailored to the specific schedules, goals, and desired intensity of each consumer. (Lancaster Decl. ¶ 2). Consumers can sign up for and access the MFJM service through MFJM's website or via the MFJM mobile application available through the Apple App Store and Google Play Store. (*Id.* at ¶¶ 3-4)

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ

### A.   The Initial MFJM Sign-Up Page for Plaintiff

Plaintiff registered for the MFJM service in January 2018 through the MJFM website. (D.E. 22 ¶ 19) Unlike the typical MFJM user, Plaintiff never downloaded the MFJM mobile app. (Kelly Decl. ¶ 2, Ex. 1: Deposition of Lisa Friedman ("Friedman Depo.") 128:1-12; Lancaster Decl. ¶ 5)

From December 26, 2017, through January 31, 2018, Defendants ran a "New Year New You" promotion that provided a discounted annual subscription to the MFJM service. (Lancaster Decl. ¶ 6; Ex. 1) During this promotional period, every consumer that visited the website saw the same banner page. (*Id.* ¶ 7) On this page the "7-Day Free Trial! Cancel Anytime" language was presented clearly and conspicuously as it was in a different sized font and set aside from the remaining language. (*Id.* ¶ 8) In addition, the text "Regular price $99.99 for 12 months. Recurring fees based on promotional price. Subscriptions are in U.S. dollars," appeared set aside and in a different sized font and in a different color – grey – set directly below the links necessary to begin the subscription process. (*Id.* ¶ 9) This language was clearly presented to each consumer and was not hidden in any way—in fact, only 22 other words appear on the entire promotional banner. (*Id.* ¶ 10)

On the same MFJM page, the MFJM website also provided users with a link to contact the MFJM customer service team if assistance was needed. (*Id.* ¶ 11) Additionally, the website also included the following language:

> Please note, in regards to cancellations there are no refunds. To avoid being charged after starting a trial per our user terms of use (see Sec. 23), you must cancel the trial before expiration. To cancel a trial or subscription, please follow the instructions here. Thank you.[1]

---

[1] The words "terms of use" operated as a hyperlink in the color blue that, when clicked on, directed users to the MFJM terms of use page. Similarly, the word "here" directed users to instructions on how to cancel the MFJM service after subscription. (*Id.* ¶ 13)

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ

(*Id*. ¶ 12, Ex. 1) (emphasis in original)

All the information above was presented to Plaintiff on the same page. (*Id*. ¶ 14) Nonetheless, Plaintiff's FAC alleges that the information was not "clear and conspicuous." (D.E. 22 ¶ 32) Despite making this allegation, Plaintiff stated in her deposition that regardless of what information was provided to her, she simply chose not to read the information presented. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 67:7-68:1; 141:11-142:25)[2] Irrespective of the information presented on the MFJM's initial banner promotion, Plaintiff did decide to sign-up for the MFJM service on a monthly billing basis and successfully completed each step of the registration process. (*Id*. 48:18-49:18) This process contained additional clear and conspicuous language, as described fully below, stating that the monthly program that Plaintiff selected would automatically renew at $14.99 per month unless she canceled before the seven (7) day free trial ended. (Lancaster Decl. ¶¶ 15-26, Exs. 1-6)

## B. Plaintiff's Sign-Up Process

Plaintiff claims that she only signed up for a free trial and not a monthly subscription, (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 48:10-22) which is categorically false as the MFJM service has <u>never</u> had the option to solely sign up for a free trial. (Lancaster Decl. ¶ 20). In fact, all MFJM consumers who signed up through the MFJM website, including Plaintiff, accessed the same screen where they were required to affirmatively click on a preferred subscription length, which unequivocally stated that the paid subscription will <u>automatically</u> begin following the trial period. (*Id*. ¶¶ 15-16, 19-24 Exs. 1-2, 5-6) This is not a novel concept.

Plaintiff states that she only recalls seeing the "seven-day free trial" language

---

[2] During her deposition, Plaintiff and her counsel were combative, and argumentative. If the Court would like to get a full picture of what is going on here, a review of Ms. Friedman's video deposition is illuminating. If the court should so request, Defendants will be willing to lodge a copy of the video deposition with the court.

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ

and that she could cancel if she did not like the service. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. at 67:7-24). No such "trial only" choice exists. (Lancaster Decl. ¶¶ 19-20) However, Plaintiff's testimony is conflicting on this point as she also admits that she *did* see the subscription lengths which were actually offered - monthly, quarterly, and yearly - when she signed up, but did not pay attention to these subscription lengths because she only signed up for the free trial. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 48:4-9) When asked whether she saw the monthly auto-renewal subscription language when signing up for the MFJM service, Plaintiff testified, "I don't know because, from my point of view, it didn't really matter." (*Id*. at 58:16-23)

It is undisputed that Plaintiff signed up for MFJM's $14.99 per month subscription option. (*Id*. 172:10-20) It is also undisputed that, when Plaintiff signed-up, the monthly subscription option plainly stated, "1-month $14.99/mo. (USD) after 7-day free trial." (Lancaster Decl. ¶ 21, Ex. 5)

In order to select the monthly subscription option, Plaintiff was required to affirmatively click on that option and then confirm her choice. (*Id*. ¶ 22) After selecting the monthly subscription plan, Plaintiff then had to choose her payment method and enter her credit card information. (*Id*. ¶ 23) Plaintiff does not dispute that she entered the credit card information, which is curiously billed to her class action attorney husband, Todd Friedman, who regularly serves as co-counsel with Ms. Friedman's current counsel. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 30:15-21; 185:14-187:3). Further, it is undisputed that Plaintiff fully understands that "all workout sites" require users to enter card information and that, unless the user cancels, the credit card "probably gets charged." (*Id*. 49:13-24; 58:3-9)

Finally, each webpage of the sign-up process contained the customer service link and an additional disclaimer stating, "To avoid being charged after starting a trial per our user terms of use (see Sec. 23), you must cancel the trial before expiration." (Lancaster Decl. ¶ 24) (emphasis in original) By the time Plaintiff completed her sign-up process she would have viewed this language no less than six (6) separate times.

5

(*Id.;* Exhibits 1, 2, 5 and 6) Once Plaintiff finished entering her e-mail, created a password, affirmatively selected her subscription option, and entered her payment information, she was again shown the disclaimer information before ultimately confirming and acknowledging the same by clicking on the "Subscribe" button clearly displayed below such information. (*Id.*) This is unequivocal evidence that Defendants complied with the ARL, or at a minimum, acted in good faith to make the terms clear, conspicuous and easy to understand for every potential user of the MFJM service.

### C.   Confirmation of Sign-Up

Upon successful registration, the MFJM service automatically sends a welcome e-mail to every user regardless of whether they subscribed via the website, iOS, or Android. (*Id.* ¶ 17) This process is completely automated. (*Id.* ¶ 18) This welcome e-mail contains the following information:

(1) "Please note, if you do not wish to start a subscription, to avoid the subscription fee, you must cancel the trial before the subscription starts. Keep in mind the trial period is 7 days and you must cancel the trial 24 hours before the initial subscription period begins.";

(2) "If you decide to cancel, for web subscriptions, you can easily cancel your trial or subscription by going to your Account and selecting Cancel under the Subscription tab.";

(3) For your convenience, more information on how to cancel can also be found at the following link: https://help.jillianmichaels.com/support/sollutions/articles/220001813 54-how-can-i-cancel-my-account-;

(4) For any additional help you may also contact our support team weekdays (excluding holidays) during regular business hours (EST) here: https: help.jillianmichaels.com.

(Id. ¶ 18, Ex. 3)

This e-mail clearly and plainly provides its recipients with working hyperlinks

6

which provide directions to cancel the subscription. (*Id.*). Furthermore, as noted above, the e-mail clearly states that the recipient will be charged if they do not cancel before the end of the trial period. (*Id.*) Defendants' records show that Plaintiff was, in fact, sent this e-mail. (*Id.* ¶ 18, Ex. 4). Plaintiff was provided with sufficient notice of the terms and conditions, as well as the cancellation policy, for the MFJM service.

### D.    Plaintiff's Cancellation "Attempts"

Once Plaintiff successfully completed her registration process, she was automatically logged in to her MFJM account via the website. (*Id.* ¶ 26). During this time, while being logged in, the Plaintiff was able to easily access the user menu and thus the appropriate page to self-cancel as thousands upon thousands of other users have done, or she could have easily contacted customer service through the visible support links on the page to assist with the cancellation. (*Id.*) Importantly, Plaintiff admits knowing that she could cancel her subscription during the trial period to avoid being billed, but never attempted to do so. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 58:3-9). Instead of logging back into the MFJM website to cancel her subscription before the trial expired, Plaintiff later decided to attempt cancellation by replying seven (7) separate times to the same automated and unmonitored monthly billing e-mails sent to her after the trial expired, while also copying, or forwarding the emails, ten (10) separate times to her class action lawyer husband.[3] (*Id.* 108:19-109:12; 110:23-111:4; Lancaster Decl. ¶¶ 28, Ex. 7; Kelly Decl. ¶ 4, Ex. 1).

Plaintiff admits that she never returned to the MFJM website to use the MFJM service. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 64:4-14) Had Plaintiff accessed the MFJM website, she would have found clear and conspicuous instructions detailing

---

[3] Plaintiff and her class action lawyer husband are therefore either incredibly slow learners, or they were purposefully replying to an unmonitored email address that they knew would not result in the cancellation of the subscription in order to build a phony record that could try to be used in this case. It is clearly the former.  This lawsuit is a malicious sham.

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ

both how to cancel and how to contact customer service for assistance, in addition to the ample instructions of same which were automatically e-mailed to Plaintiff upon her subscription to MFJM. (Lancaster Decl. ¶ 17, 25; Exs. 1-6) Tellingly, Plaintiff never attempted to dispute the credit card charges associated with her MFJM subscription, despite admitting to doing just that with other unrelated online purchases she has made. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 44:14-23; 168:5-14)

When asked why she did nothing more than send brief two to seven-word e-mails in response to what was clearly an unmonitored and automated payment confirmation e-mail, Plaintiff was only able to respond with "I can't answer. I guess I'm - - I'm - - it's like I said, I'm very, very, very busy." (*Id.* 117:4-18). Instead of contacting the help center, a link to which is located at the bottom of each and every MFJM webpage, or logging into the website and clicking on her account link which allowed her to cancel, (Lancaster Decl. ¶ 25, Ex. 1-2, 5-6), Plaintiff decided to go through the detailed and time-consuming process of filing a lawsuit.

Finally, in February 2019, Plaintiff eventually followed the very simple instructions set forth on the MFJM website and in the initial welcome e-mail and canceled her subscription. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 158:11-23). When asked how she was able to do so without any assistance, Plaintiff admitted that she went to her account, selected "cancel order," and hit "cancel" under the "subscription" tab. (*Id.* 101:17-25) As noted by the Plaintiff, this process did not take long. (*Id.* 193:12-23) This is not surprising, considering that over 97% of MFJM's users who decide to cancel are able to do so without requesting any assistance whatsoever. (Lancaster Decl. ¶ 31). Of the 3% that do request additional help, the vast majority seek assistance in cancelling their subscription through the third-party Apple App Store or Google Play Store, not the MFJM website. (*Id.* ¶ 32) Even then, those that do require additional help are quickly assisted, provided that they seek assistance in the manner clearly provided by the MFJM website and welcome e-mail and actually contact customer support. (*Id.* ¶ 33)

## III.   PROCEDURAL HISTORY

Plaintiff filed the instant action in the Superior Court of the State of California, County of Los Angeles on August 29, 2018. (D.E. 1-1) Defendants timely removed the litigation to the United States District Court for the Central District of California on November 2, 2018. (D.E. 1) Plaintiff's Original Complaint contained six separate causes of action. (D.E. 1-1) On March 8, 2019, Defendants filed a Motion for Judgment on the Pleadings. (D.E. 16) Defendants' Motion was granted in part on April 25, 2019, and two of Plaintiff's causes of action, including Plaintiff's allegation that Defendants violated California's Automatic Renewal Law were dismissed. (D.E. 19) Plaintiff subsequently dropped her claim for restitution in the FAC. (*See* D.E. 22).

On May 16, 2019, Plaintiff filed the FAC. (D.E. 22) The FAC alleges three separate causes of action for violations of the California: (1) UCL; (2) CLRA; and (3) FAL (*Id.*). Plaintiff subsequently moved for Class Certification Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) and to be appointed class counsel on August 2, 2019. (D.E. 29). Defendants timely opposed that motion on August 23, 2019. (D.E. 33).

## IV.   LEGAL STANDARD

Summary judgment is "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986).

"In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists." *Caiz v. Roberts*, 382 F. Supp. 3d 942, 946 (C.D. Cal. 2019); *citing Anderson*, 477 U.S. at 248. "Where the nonmovant bears the burden of proof at trial, the movant need only prove that there is no evidence to support the nonmovant's case." *Id.* at 947; *citing In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

Here, based on the evidence, there is no genuine dispute of material fact as to the issues and Defendants are entitled to judgment as a matter of law. Further, the undisputed evidence shows that Defendants acted in good faith and are therefore shielded from any civil liability pursuant to Cal. Bus. & Prof. Code § 17604(b).

## V.   PLAINTIFF DOES NOT MEET THE REASONABLE CONSUMER STANDARD.

Claims made under the CLRA, FAL, and UCL are governed by the "reasonable consumer" test. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable consumer standard, [Plaintiff] must show that 'members of the public are likely to be deceived.'" *Id.*; *quoting Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir. 1995). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, it must be "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* The reasonable consumer standard "requires a plaintiff to show potential deception of consumers acting reasonably in the circumstances—not just any consumers." *Hill v. Roll Internat. Corp.*, 195 Cal. App. 4th 1295, 1304 (2011). Here, Plaintiff is not a "reasonable consumer." As the record indicates, perhaps with guidance from her attorney husband, she took great efforts to willfully ignore the auto-renewal language presented to her in a clear and conspicuous manner throughout her sign-up process. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 67:7-68:1; 141:11-142:25) Further, the record reveals that precisely zero other MFJM consumers have been confused by or complained about the automatic renewal terms in the manner which Plaintiff alleges. (Lancaster Decl. at ¶ 36) As such, the Court should review MFJM's sign-up process as seen by a reasonable consumer, (i.e. one that paid attention to, or at the very least did not willfully ignore, the sign-up process and information provided to them).

10

## VI.   DEFENDANTS' GOOD FAITH SAFE HARBOR

Though Defendants can demonstrate their compliance with all applicable statutes, assuming for the sake of argument that the Court finds any technical violation of Cal. Bus. & Prof. Code §§ 17600, *et seq.*, which it should not, Defendants are protected from civil liability because they attempted to comply with the statute in good faith. Pursuant to Section 17604(b), **"[i]f a business complies with the provisions of this article in good faith, it *shall not* be subject to civil remedies**." (Emphasis added.) Defendants have put Plaintiff on notice of this safe harbor on numerous occasions – further demonstrating the frivolity of this action.

This safe harbor, if successfully proven, is an absolute bar to Plaintiff's recovery on their UCL claims and any claim relying on a violation of the ARL. *Cel-Tech Commc'ns., Inc. v. L. A. Cellular Tel. Co*., 20 Cal. 4th 163, 188 (1999) (good faith sales allowed under statute cannot be unfair or unlawful under the UCL); *see also Lopez v. Nissan N. Am., Inc*., 201 Cal. App. 4th 572 (2011). Although no case has yet defined "good faith compliance" under Section 17604(b), it is presumably less than perfect compliance: perfect technical compliance is not a violation at all, so a good faith safe harbor would be meaningless. *See Connors v. Nat'l Transp. Safety Bd.*, 844 F.3d 1143, 1146 (9th Cir. 2017) ("We avoid constructions that render a statutory provision superfluous.").

"Although the unfair competition law's scope is sweeping, it is not unlimited. [. . .] When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Hauk v. JP Morgan Chase Bank United States*, 552 F.3d 1114, 1122 (9th Cir. 2009); *quoting Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel*. Co., 20 Cal. 4th 163, 183 (Cal. 1999).

As described, Defendants complied with the ARL statute in good faith by, among other things, (1) presenting the terms of the auto-renewal program clearly set out in different fonts and colors in a conspicuous location and in multiple locations throughout the sign-up process; (2) providing the user with an welcome e-mail further

11

detailing the auto-renewal and cancellation process; (3) providing the user with simple methods of cancellation via the MFJM website; and (4) having active live customer support available to assist users. (Lancaster Decl. ¶ 24-25; Exs. 1-2, 5-6)

Obviously, the MFJM service was never intended to confuse or defraud any customer and this is evidenced by a simple viewing of the website itself and MFJM's history of receiving absolutely zero negative feedback similar to that of the Plaintiff's complaint. (Lancaster Decl. ¶ 36)

Plaintiff, along with her class-action attorney husband, likely simply saw a perceived potential vulnerability on minor technical aspects of the MFJM website and concocted a lawsuit in hopes of achieving a quick settlement through harassment and meritless allegations. Plaintiff's behavior should not be rewarded and this Court should acknowledge that Defendants have, at the very least, made a good-faith attempt to comply with all statutory requirements which bars Plaintiff from any recovery. There is zero evidence in this record of bad faith, and this alone should result in summary judgment in favor of Defendants.

## VII.   PLAINTIFF CANNOT SHOW A VIOLATION OF THE UCL.

Here, Plaintiff attempts to bring her ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.* claim through the UCL. According to the FAC, "Defendants violated Cal. Bus. & Prof. Code §§ 17600-17606 by failing to offer terms of continuous services in a clear and conspicuous manner and "fail[ing] to comply with the legal requirements for informing Plaintiff and Class Members with how to cancel their subscription." (D.E. 22 ¶ 45).

While it is a well-accepted practice for a plaintiff to use the UCL as a vehicle to allege a cause of action under a different statute, "[a] plaintiff who 'cannot state a claim under the "borrowed" law . . . cannot state a UCL claim either.'" *Lopez v. Stages of Beauty, LLC*, 307 F.Supp.3d 1058, 1070 (S.D. Cal. 2018); *quoting Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1206 (E.D. Cal. 2013). Therefore, in order to successfully prove her UCL claim, Plaintiff must establish violations of

the ARL. The undisputed facts show that Plaintiff cannot make such a showing.

### A. Technical Violations of the ARL Do Not Automatically Trigger a Violation of the UCL

"Business and Professions Code section 17204 restricts private standing to bring a UCL action to 'a person who has *suffered injury in fact* and has *lost money or property* as a *result* of the unfair competition." *Orcilla v. Big Sur, Inc*., 244 Cal. App. 4th 982, 1013 (2016); *Jenkins v. JPMorgan Chase Bank, N.A.,* 216 Cal. App. 4th 497, 521-522 (2013) (emphasis in original). "Thus, the UCL standing requirements include an economic injury prong and a causation prong. 'A plaintiff fails to satisfy the causation prong of the statute if he or she would have suffered 'the same harm whether or not a defendant complied with the law.'" *Id.*; *quoting Jenkins* at 216 Cal. App. 4th 522.

Therefore, even if Defendants did commit a technical violation of the ARL, which they did not, there is not a corresponding violation of the UCL unless Plaintiff actually relied on such violation, *causing* an injury. Here, the uncontested facts show that Plaintiff did not rely on the language presented by the MFJM website but instead *willfully ignored it*. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 67:7-68:1; 141:11-142:25). As such, Plaintiff does not have standing to allege a violation of the UCL through the ARL. Accordingly, Plaintiff's UCL cause of action should be dismissed.

## VIII. PLAINTIFF CANNOT SHOW A VIOLATION OF THE ARL

Plaintiff cannot show any violation of the ARL. In order to prove a violation of the ARL pursuant to Cal. Bus. & Prof. Code § 17602(a)(1)-(3). Pursuant to Cal. Bus. & Prof. Code § 17602(d), subpoints (a)(1) and (a)(2) must be completed "[p]rior to the completion of the initial order." However, per Cal. Bus. & Prof. Code § 17602(d)(1) the acknowledgment requirements of (a)(3) can be fulfilled after the completion of the initial order. As discussed fully herein, the MFJM sign-up process, taken as a whole, complies fully with the above requirements.

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ

## A. The Terms Were Clear and Conspicuous.

In order to demonstrate a violation of Section 17602(a)(1), Plaintiff must show both that the automatic renewal offer terms were not presented in a "clear and conspicuous" manner and that there was no clear and conspicuous explanation of the price to be charged upon expiration of the user's free trial. The undisputed facts show that Plaintiff has failed to meet this burden.

The ARL statute defines "clear and conspicuous" as meaning "in larger type than the surrounding text, **or** in contrasting type, font, or color to the surrounding text of the same size, **or** set off from the surrounding text of the same size . . . in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c) (*emphasis added*). Importantly, the statute does not require all of these factors to be present in order to satisfy the "clear and conspicuous" threshold.

In satisfaction of Section 17601(a), Defendants provided the automatic renewal terms in a clear and conspicuous manner because on the initial sign-up page viewed by Plaintiff during the "New Year New You" promotion. Such webpage contained the "7-Day Free Trial! Cancel Anytime" language and was presented clearly and conspicuously by being set off in a different location and font size than the remaining text.[4] (Lancaster Decl. ¶ 8) The plain text "Regular price $99.$^{99}$ for 12 months. Recurring fees based on promotional price. Subscriptions are in U.S. dollars." Was also set aside and in a different font and color, grey, directly underneath the links necessary to begin the subscription process.  (*Id.* ¶¶ 9-10)

However, Plaintiff did not enroll in the annual subscription but instead affirmatively chose a monthly subscription package. (D.E. 22 ¶ 20) To make that

---

[4] The website homepage, and every relevant sign-up page in the process, contained the following language, "To avoid being charged after starting a trial, per our user terms of use (see Sec. 23), you must cancel the trial before expiration. To cancel a trial or subscription please follow the instructions here." (Lancaster Decl. ¶ 12)

(footnote continued)

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ

selection, Plaintiff first clicked on the "Get Started" button on the MFJM homepage.[5] (Lancaster Decl. ¶ 16, Ex. 2) Plaintiff was then redirected to www.jillianmichaels.com/join where she entered her e-mail address and created a password. (*Id.*) Plaintiff's account was then sent a "Welcome" e-mail confirming her account setup. (*Id.* ¶ 17, Ex. 3) Once the account was created, Plaintiff selected her subscription plan – choosing between the 1-month, 3-month or 12-month plan options. (*Id.* ¶ 19) Directly below the 1-month plan option that Plaintiff selected, in a different font than the surrounding text and set aside from any other words, appeared the following language: "$14.99/mo. (USD) after 7-day free trial." (*Id.* ¶ 21)

By any definition, this information was clear and conspicuous. It is literally impossible for Plaintiff to have selected the monthly option without viewing the accompanying language as it was on the very same button and no other information was included beyond that language. (*Id.*) There was no option for Plaintiff to sign up for only a free trial. (*Id.* ¶ 20) As mentioned, it was impossible for Plaintiff to avoid viewing the language presented during the sign-up process and she admits that she did in fact see it when signing up. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 48:4-9) Consumers, including Plaintiff, affirmatively consented to these offer terms multiple times and are presented with language stating that the trial will automatically be renewed if not cancelled no less than six (6) separate times throughout the subscription process in accordance with Cal. Bus. & Prof. Code § 17602(a)(2). (Lancaster Decl. ¶ 24; Exs. 1-2, 5-6)

Based on the undisputed facts, Plaintiff cannot establish a violation of Cal. Bus. & Prof. Code § 17602(a)(1).

## B. Plaintiff Gave Her Affirmative Consent

In order to satisfy Cal. Bus. & Prof. Code § 17602(a)(2), Plaintiff must show

---

[5] The same language noted in footnote three (3) is also presented on this page verbatim and throughout the website sign-up process as previously discussed.

that she was charged without first giving her affirmative consent to the agreement "containing the automatic renewal offer terms." The term "Automatic renewal offer terms" is defined in Cal. Bus. & Prof. Code § 17601(b) and require the party to disclose five (5) pieces of information.

All five (5) of the points in Cal. Bus. & Prof. Code § 17601(b) were clearly and conspicuously disclosed to Plaintiff when she selected MFJM's monthly subscription option. First, the $14.99/mo. statement indicates that the subscription is on an ongoing monthly basis of $14.99 until Plaintiff cancels her subscription. (Lancaster Decl. ¶ 21) Second, the text "To cancel a trial or subscription please follow the instructions here." was provided at the bottom of that very same webpage as well as in five (5) other locations during the sign-up process. (*Id.* ¶ 24; Exs. 1-2, 5-6) The word here is a hyperlink which, when clicked on, leads to the following web address of the MFJM site:   https://help.jillianmichaels.com/support/solutions/articles/22000181254-how-can-i-cancel-my-account- and provided users with detailed step-by-step instructions on cancelling in an article entitled, "How Can I Cancel My Account." (*Id.*) Third, as stated above, the language clearly indicates that there was a recurring charge of $14.99/mo. (*Id.* ¶ 21) Plaintiff was additionally required to enter her (husband's) credit card information prior to the completion of the sign-up process, further indicating that she was well aware that the charges would be made to that credit card. (*Id.*¶ 23) Fourth, the $14.99/mo. language indicates that the length of the automatic renewal term is continuous monthly and indefinitely. (*Id.* ¶ 21) Finally, the $14.99/mo. option chosen shows that the minimum purchase obligation was one month, unless Plaintiff decided not to cancel, in which it would automatically renew indefinitely. (*Id.*) This is how any recurring subscription works, a process by which Plaintiff admits she is familiar. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 49:13-18; 58:3-9)

Therefore, the language was presented in a "clear and conspicuous" manner for purposes of Cal. Bus. & Prof. Code § 17602(a)(1), and the "automatic renewal offer

1    terms" were clearly presented for purposes of Cal. Bus. & Prof. Code § 17602(a)(2).

2    **C. Plaintiff was Provided with an Acknowledgement**

3        To satisfy Cal. Bus. & Prof. Code § 17602(a)(3), Plaintiff must show that

4    Defendants failed to provide an acknowledgement that includes the automatic renewal

5    offer terms, cancellation policy, and information regarding how to cancel. As noted

6    above, per Cal. Bus. & Prof. Code § 17602(d)(1), this requirement can be satisfied

7    after the completion of the initial order. However, for purposes of this Section, there

8    is no requirement in Section 17602(a)(3) that any one single document be considered

9    an acknowledgment. Rather, Plaintiff need only be provided an acknowledgement of

10   the automatic renewal terms, cancellation policy, and instructions on how to cancel

11   in a manner that is capable of being retained by the consumer. *Id.* Therefore, nothing

12   prohibits presenting Plaintiff with a grouping of documents which amounts to a

13   compliant acknowledgement to the consumer.

14       As described above, the automatic renewal terms, cancellation policy, and

15   information on how to cancel was provided to Plaintiff while she signed up for the

16   MFJM Service. (Lancaster Decl. ¶¶ 8-25; Exs. 1-6). Furthermore, upon successfully

17   registering, all users (Plaintiff included) were presented with an automated welcome

18   email which provides additional acknowledgements regarding the subscription and

19   cancelation policy. (*Id.* ¶¶ 17-18; Ex. 3) All such information and disclosures were

20   presented to Plaintiff well before she was charged a single cent. Defendants, acting in

21   good faith, presented this information to Plaintiff and all users in an attempt to make

22   the MFJM sign-up process as clear and easy as possible.  As such Defendants have

23   complied with this Section and are further protected by the Good Faith Safe Harbor.

24   **D. The MFJM Service is not an Unconditional Gift**

25       Plaintiff's final argument is that by failing to provide her affirmative consent

26   prior to enrollment, the MFJM subscription is to be deemed an unconditional gift

27   pursuant to Cal. Bus. & Prof. Code § 17603. (D.E. 22 ¶ 31). Cal. Bus. & Prof. Code

28   § 17603 states in relevant part, "[i]n any case in which a business sends any goods,

17

wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent as described in Section 17602, the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer . . . ." Cal. Civ. Code § 1761(a) defines goods as, "tangible chattels bought or leased for use primarily for personal, family, or household purposes. . . ."

At no point in Plaintiff's FAC does she state that the MFJM program was a "good." In fact, Plaintiff's FAC refers to the subscription as the "'My Fitness by Jillian Michaels' **service**" throughout. (*See* D.E. 22 ¶¶ 2, 14, 15, 19, 21, 33, 36, 44, 46, 60). (Emphasis added.) As Plaintiff has testified, she did not download anything relating to the MFJM service, including the app which included the MFJM workout videos. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 128:1-12) Instead, Plaintiff only went to the MFJM website, subscribed, and logged out. (*Id.* 64:4-14). If nothing was downloaded, then there can be no "goods" to be deemed a gift. *See Rojas-Lozano v. Google, Inc.,* 159 F. Supp. 3d 1101, 1116 (N.D. Cal. 2016) (finding intangible online software not be a good); *See also Ladore v. Sony Comput. Entm't Am., LLC,* 75 F. Supp. 3d 1065, 1073 (N.D. Cal. 2014)(distinguishing a video game that was purchased from brick-and-mortar store, which it classified as a good, from an "intangible" software, or otherwise online game).

As Plaintiff has not alleged that she received a good beyond simply reciting the statute, coupled with the undisputed facts showing that Plaintiff did not download, print, or otherwise remove any items from the MFJM service, Plaintiff's Cal. Bus. & Prof. Code § 17603 argument fails. Thus, the corresponding request for relief pursuant to Plaintiff's UCL cause of actions must be dismissed. (D.E. 22 ¶¶ 46-47).

## IX.   NO VIOLATION OF THE FAL

Plaintiff's FAL cause of action, like her CLRA cause of action, is merely a recitation of her UCL cause of action. Plaintiff's FAC alleges that MFJM's advertising was false because "Defendants failed to disclose the terms of its 'auto-

18

renewal' and continuous service program in a clear and conspicuous manner when marketing its "My Fitness by Jillian Michaels" service. (D.E. 22 ¶ 60).

"Whether an advertisement is 'misleading' must be judged by the effect it would have on a reasonable consumer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). A reasonable consumer is "the ordinary consumer acting reasonably under the circumstances." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (Cal. Ct. App. 2006).

### A. Plaintiff did not rely on the MFJM Advertisement.

A plaintiff alleging violations of the FAL is required to plead actual reliance on the alleged false or misleading advertisement. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969 n. 25 (S.D. Cal. 2012). To establish actual reliance, a plaintiff must show that the misrepresentation or omission was "an immediate cause of the injury-producing conduct." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). "A plaintiff can satisfy this requirement by alleging she would not have purchased the product, or paid as much for the product, absent the misrepresentation or omission." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013).

In her testimony, Plaintiff states that she simply did not read the terms and conditions provided. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 67:7-68:1; 141:11-142:25) If Plaintiff admittedly did not rely on the terms advertised then there can be no violation of the California's FAL. *Daniel,* 806 F.3d at 1225. Nowhere in the FAC nor in her deposition testimony does Plaintiff allege that she would not have registered for the MFJM service absent the auto-renewal provision.

During her deposition, Plaintiff goes on to state that the reason she sought to cancel the MFJM service was not because she was misled regarding the advertisement on the seven (7) day trial, but because when she logged into the MFJM website she could not locate the workout videos. (*Id.* 19:17-19 "I set up this lawsuit because I had signed up for a free trial of a workout video website that was not a workout video

19

website.") Defendants' advertisement on this point is undeniably accurate. The MFJM service absolutely contains workout videos. (Lancaster Decl. ¶ 2). As the undisputed facts show, Plaintiff did not actually rely on the auto-renewal advertisement in deciding to sign up for the MFJM service. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 67:7-68:1; 141:11 – 142:25) Furthermore, the advertisement that the Plaintiff did rely on, (i.e. the promise of access to workout videos), is not false or misleading whatsoever as the workout videos that Plaintiff sought are easily accessible and clearly do exist. (Lancaster Decl. at ¶ 2) Plaintiff's alternative argument for bringing the lawsuit was that she had difficulty cancelling her account. (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. at 100:5-8 "I have no problem that I paid money for something. I had just asked for it to stop. That's why we're here.") Although Plaintiff did not follow the proper procedures for cancelling, there is likewise no advertisements which state that cancellation was to be attempted in the method used by the Plaintiff. (Lancaster Decl. ¶ 24) For these reasons, and the reasons stated above, Plaintiff's FAL cause of action is without merit and should be dismissed.

## B. The Auto-Renewal MFJM Advertisement is Not False, Untrue, or Misleading.

Despite the undisputed fact that Plaintiff did not actually rely on the terms and conditions presented when registering for the MFJM service, the undisputed facts also reveal that the advertisements were neither untrue nor misleading. "In determining whether a statement is misleading under the statute, 'the primary evidence in a false advertising case is the advertising itself.'" *Colgan,* 135 Cal. App. 4th at 679; *quoting Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (Cal. Ct. App. 2003). As explained below, the undisputed facts demonstrate that Defendants clearly disclosed the terms of its auto-renewal during its advertisement.

Every step of the registration process, from start to end, contained language informing consumers that if they did not cancel within seven (7) days of starting the trial, they would automatically be enrolled in the subscription plan option that they

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ

selected during registration. (*See e.g.* Lancaster Decl. ¶ 24; Exs. 1, 2, 5 and 6)

As noted, the test for whether Defendants have violated the FAL is whether the advertisement presented would be found to be misleading by a reasonable and ordinary consumer acting reasonably under the circumstances. *See Davis v. HSBC Bank,* 691 F.3d 1152, 1162 (9th Cir. 2012).

Any reasonable and ordinary consumer acting reasonably who actually viewed the clear and conspicuous auto-renewal terms and conditions unquestionably would have known that after the seven (7) day trial expired their credit card would be charged on a recurring basis based on what subscription option was chosen. Again, Defendants have received exactly zero other auto-renewal complaints similar to that of the Plaintiff's complaint. Notably, Plaintiff acknowledges that she was well aware that "all workout sites" require users to enter credit card information and that, unless the user cancels, the credit card "probably gets charged." (Kelly Decl. ¶ 2, Ex. 1: Friedman Depo. 49:13-18; 58:8-9) Plaintiff, in the FAC, merely recites the elements of the FAL and states that Defendants failed to disclose the terms of the MFJM service in a clear and conspicuous manner. (D.E. 22 ¶ 60-63). Although Defendants vehemently dispute this point, there is no requirement in the FAL that the advertisement be "clear and conspicuous." *See* Cal. Bus. & Prof. Code § 17500. Instead, there is a prohibition on the advertisement being false or misleading. (*Id.*) Because no reasonable consumer would have been misled by the auto-renewal process, Plaintiff's FAL cause of action fails and should be dismissed.

## X.    NO VIOLATION OF THE CLRA

Plaintiff's FAC alleges that Defendants violated Cal. Civ. Code § 1770(a) by both failing to "disclose its 'auto-renewal' program terms and continuous service terms." (D.E. 22 ¶ 53). Due to this alleged failure, Plaintiff states that Defendants have violated Cal. Civ. Code § 1770(a)(4), (5), (9), (14), and (19). As discussed above, Plaintiff's arguments are without merit. Plaintiff's argument that that alleged violation in turn creates violations of these five subsections of the CLRA is equally without

21

merit. Each of these subsections are addressed in turn.

Cal. Civ. Code § 1770(a)(4) prohibits "using deceptive representations or designations of geographic origin in connection with goods or services." The MFJM service contains no specific representations or designation of geographic origin and, beyond the citation, the FAC contains no allegation that it does either, deceptive or otherwise. Therefore, Plaintiff's Cal. Civ. Code § 1770(a)(4) allegation is without merit and should be dismissed.

Cal. Civ. Code § 1770(a)(5) forbids "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have." Beyond citing the statute, Plaintiff does not identify any representation suggesting that the MFJM contains sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it does not actually have. To the extent that Plaintiff claims that she was unable to locate the MFJM's workout videos, those obviously do exist and are easily accessible to an average user. (Lancaster Decl. ¶ 2) Therefore, Plaintiff's Cal. Civ. Code § 1770(a)(5) allegation is without merit and should be dismissed.

Cal. Civ. Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised." Again, beyond simply citing to the code section, Plaintiff fails to provide any supporting argument. As noted by Plaintiff in her FAC, "Defendants' "My Fitness by Jillian Michaels" service is advertised as a wellness tool providing workouts by Michaels as well as a customizable meal planner." (D.E. 22 ¶ 15) The remainder of this paragraph and ¶ 16 contain additional recitations of the advertisements relating to the MFJM service. However, Plaintiff's complaint does not allege – nor can Plaintiff allege - that any of these services were not actually presented by the MFJM service, as advertised. Therefore, Plaintiff's Cal. Civ. Code § 1770(a)(9) allegation is without merit and should be dismissed.

Cal. Civ. Code § 1770(a)(14) prohibits "representing that a transaction confers

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ

or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." Allegedly failing to properly disclose the auto-renewal terms in a clear and conspicuous manner does not represent a transaction conferring rights, remedies, or obligations that it does not have or are prohibited by law. Therefore, Plaintiff's Cal. Civ. Code § 1770(a)(14) allegation is without merit and should be dismissed.

Cal. Civ. Code § 1770(a)(19) forbids "inserting an unconscionable provision in the contract." Plaintiff states that the auto-renewal program terms are unconscionable because they are not adequately disclosed and thus charge the consumers without their affirmative consent. This argument is without merit. As discussed, all auto-renewal terms are fully disclosed and all users, including Plaintiff, affirmatively consented to such terms before being charged. (Lancaster Decl. ¶ 8-24; Exs. 1, 2, 5, 6) Therefore, Plaintiff's Cal. Civ. Code § 1770(a)(19) allegation is without merit and should be dismissed.

Outside of a blanket recitation of the elements for a CLRA cause of action, Plaintiff has offered little to no evidence in support of her CLRA cause of action. Instead, Plaintiff appears to rely almost entirely on the validity of her UCL cause of action as a predicate for her CLRA cause of action, claiming that "Defendant failed to properly disclose its 'auto-renewal' program terms and continuous services." (D.E. 22 ¶ 53). Claims for relief must contain more than a "formulaic recitation" of the elements of a claim to be sufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Wynn v. Turner*, 631 F. App'x 483, 484 (9th Cir. 2016) (applying "formulaic recitation" standard in summary judgment context). For this reason, and the reasons stated above, Plaintiff's CLRA claim should be dismissed.

## XI.   PLAINTIFF LACKS STANDING FOR PROSPECTIVE INJUNCTIVE RELIEF

Plaintiff's FAC also seeks prospective injunctive relief under the CLRA. (D.E. 22 ¶ 55). To have standing to seek prospective injunctive relief, a plaintiff must

23

"demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation marks omitted). To establish standing for prospective injunctive relief, a plaintiff must demonstrate that "[s]he has suffered or is threatened with a 'concrete and particularized' legal harm . . . coupled with 'a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Bates v. United Parcel Service, Inc.,* 511 F.3d 974, 985 (9th Cir. 2007); *quoting City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983).

Importantly, Plaintiff does not allege that she intends to purchase the service again. (*See* D.E. 22) Therefore, it is entirely implausible that Plaintiff risks any future alleged harm. As such, Plaintiff's request for prospective injunctive relief should be denied.

## XII.   DEFENDANTS JILLIAN MICHAELS AND EMPOWERED MEDIA SHOULD BE DISMISSED

The FAC alleges that "each and every Defendant herein was the owner, agent, ostensible agent, apparent agent, servant, joint venturer, alter ego and employee, each of the other and each was acting within the course and scope of his or him[*sic*] ownership, agency, service, joint venture and employment." (D.E. 22 ¶ 10). Based on this unsupported alter ego allegation, Plaintiff contends that "each and every Defendant was the successor of the other and each assumes the responsibility for the actions and omissions of all other Defendants." (*Id.* at ¶ 11). Defendants deny these allegations are denied in their entirety. (*See* D.E. 23 ¶¶ 10, 11).

The testimony and evidence to date has not revealed anything supporting Plaintiff's allegations on this point. (*See* Kelly Decl., ¶ 2, Ex. 3: Deposition of Empowered Media 17:15-17 (EM Digital was formed to operate the My Fitness by Jillian Michaels Service); 18:2-5 (Empowered Media was not involved in drafting of the terms of use in the My Fitness by Jillian Michaels Service); 18:6-14 (Empowered Media was not involved in the design of the My Fitness by Jillian Michaels Website or App); *See also* Declaration of Giancarlo Chersich at ¶¶ 2-8. Tellingly, Plaintiff did

24

not depose Defendant Jillian Michaels and no evidence has been presented to date which demonstrates that Ms. Michaels had any involvement in the auto-renewal program beyond assisting in providing the workout and meal prep content contained on the website and app. Defendants deny that Jillian Michaels had any such involvement. *Id.* ¶ 9; *See also* Lancaster Decl. ¶ 37.

As such, Empowered Media, LLC and Jillian Michaels are improperly joined as defendants and should be dismissed. "The application of the alter ego doctrine is limited to individuals who influence and govern the corporation or who were actors in the course of conduct constituting the abuse . . ." *Tatung Co. v. Shu Tze Hsu*, 217 F. Supp.3d 1138, 1181 (C.D. Cal. 2016).

Because Plaintiff's allegations have not shown that Empowered Media, LLC and Jillian Michaels had <u>any</u> involvement with the auto-renewal portion of MFJM service, much less the involvement necessary to pierce the corporate veil and consider them alter egos of EM Digital, Defendants respectfully request that the Court grant its Motion and dismiss both Empowered Media, LLC and Jillian Michaels as defendants in this litigation.

## XIII. CONCLUSION

For the above stated reasons, Defendants respectfully request this Court grant its Motion for Summary Judgment in full and dismiss the current litigation without leave to amend.

September 5, 2019                    Respectfully Submitted,


                                    /s/ Richard S. Busch
                                    RICHARD S. BUSCH
                                    KING & BALLOW
                                    Attorneys for the Defendants
                                    JILLIAN MICHAEL, EM DIGITAL,
                                    LLC and EMPOWERED MEDIA, LLC

DEFENDANTS' MEMORANDUM OF Ps AND As IN SUPPORT OF MSJ