# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 18-9414-GW(SSx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | *Lisa Friedman v. Jillian Michaels, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jesenia A. Martinez | Richard S. Busch |
| John P. Kristensen | Keith Kelly |

PROCEEDINGS:     **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(B)(2) AND (B)(3) AND TO BE APPOINTED CLASS COUNSEL [29]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Plaintiff's Motion is TAKEN UNDER SUBMISSION. Court to issue ruling.

| | : | 25 |
|---|---|---|
| Initials of Preparer | JG | |

***Friedman v. Michaels, et al.***, Case No. 2:18-cv-09414-GW-(SSx)
Tentative Ruling on Motion for Class Certification Pursuant to Fed. R. Civ. P. 23(b)(2)
and (b)(3) and Appointment of Class Counsel

## I.  Background

In this putative class action filed against Jillian Michaels, EM Digital, LLC and Empowered Media, LLC (collectively, "Defendants") on August 20, 2018, plaintiff Lisa Friedman ("Plaintiff") seeks certification of a class (along with appointment as class representative and appointment of class counsel) pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2) and (b)(3).  Plaintiff filed the operative First Amended Class Complaint for Damages and Injunctive Relief ("FACC") on May 16, 2019.  The FACC presents claims for: 1) violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.) ("Section 17200"), 2) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA"), and 3) violation of California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. ("Section 17500").[1]  As the FACC initially describes the subject matter of the case, it concerns Defendants' automatic renewals of consumers' subscriptions to Defendants' "My Fitness by Jillian Michaels" service without disclosing that feature of the transaction and without obtaining the consumers' affirmative consent.  *See* FACC ¶¶ 2, 32-37; *see also id.* ¶¶ 15-17 (describing the "My Fitness" service and available subscription plans).

Plaintiff purchased a subscription in or around January 2018, and was asked to fill in a payment method.  *See id.* ¶ 19.  After a 7-day free trial expired, her chosen payment method was charged every month cycle, and continues to be so charged.  *See id.* ¶ 20.  She asserts that Defendants' notices and disclosures to consumers failed to comply with the requirements of California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, et seq.  *See* FACC ¶ 3.  More specifically, Defendants allegedly failed to inform Plaintiff, in clear and conspicuous language of: (1) an adequate description of the cancellation policy that applies to the offer; (2) that the purchasing agreement would continue until the consumer cancelled; (3) that the recurring charges would be charged to

---

[1] The action was originally filed in California state court and removed to this Court on the basis of jurisdiction under the Class Action Fairness Act.  Although in the FACC Plaintiff asserts that removal was improper, *see* FACC ¶ 14, she has never moved to remand the action.

the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (4) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (5) that there is a minimum purchase obligation, if any.  *See id.* ¶ 32; *see also id.* ¶¶ 45, 53, 60.  Defendants' correspondence with Plaintiff also did not include an acknowledgment that includes the automatic renewal and/or continuous service offer terms, cancellation policy, or disclose – in a manner capable of being retained by Plaintiff – any clear and conspicuous way for her to cancel the auto-renewal subscription or offer directions on how she could cancel the auto-renewal subscription.  *See id.* ¶¶ 21, 39; *see also id.* ¶ 45.  When Plaintiff asked, by way of e-mail, that Defendants cancel her subscription, they refused or failed to do so.  *See id.* ¶¶ 22-25.  Among other types of relief, Plaintiff seeks injunctive relief in connection with each of her three claims.  *See id.* ¶¶ 49, 54-55, 65-66.

As noted above, Plaintiff now seeks certification of a class under both Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3).  In the instant motion, Plaintiff has defined the class she now seeks to certify as "All consumers, who were first charged from January 1, 2017 to the present, whose credit cards or debit cards were automatically charged on a recurring basis by Defendants as part of a subscription to the 'My Fitness by Jillian Michaels' service."  Docket No. 29, at 7:3-8.  Plaintiff also refers to this as a "California class," indicating that she further seeks to restrict it to California residents who meet this definition (though that limitation is apparently not part of the proposed class definition itself).  *See* Docket No. 29, at 2:15-16, 7:3-8; *see also* Docket No. 29-8, at 2:12-18.

**II.  Analysis**

A.  Class Certification Standards Under Fed. R. Civ. P. 23

The proponent of class treatment bears the burden of demonstrating that class certification is appropriate.  *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982); *see also Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002 (9th Cir. 2018) ("A representative plaintiff may sue on behalf of a class when the plaintiff affirmatively demonstrates the proposed class meets the four threshold requirements of

Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation.").  Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure.  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).

Rule 23 requires the party seeking certification to satisfy all four requirements of Rule 23(a)[2] and at least one of the subparagraphs of Rule 23(b).[3]  *See id.* at 1234.  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("*Dukes*").   The court is permitted to consider any material necessary to its determination,[4] though it should not go so far as to engage in a trial of the merits (while, at the same time, recognizing that *some* overlap with merits-considerations may be necessary in the certification analysis).  *See id.* at 350-51 (noting that the "rigorous analysis" required at class certification will "[f]requently…entail some overlap with the merits of the

---

[2] Rule 23(a) requires that the party/parties seeking certification show:

  (1)   the class is so numerous that joinder of all members is impracticable;
  (2)   there are questions of law or fact common to the class;
  (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
  (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

[3] As noted, here Plaintiff seeks certification under both Rules 23(b)(2) and (b)(3) (or what she terms a "hybrid" certification).

[4] Plaintiff has filed two sets of objections in connection with this motion:  one directed at exhibits Defendants submitted with their Opposition brief (Docket No. 36-2) and one directed at what Plaintiff views as both Defendants' response to that first set of evidentiary objections and an attempt by Defendants to submit supplemental evidence *after* Plaintiff had filed her Reply brief and associated papers (Docket No. 46).  The Court will permit Defendants to file their response (Docket No. 44) to Plaintiff's original evidentiary submissions, but rejects Defendants' attempt to supplement the evidentiary record after Plaintiff filed her Reply brief.  With that approach to the issue, the Court sustains all eight of Plaintiff's objections in Docket No. 36-2.  Even if the Court were inclined to accept Defendants' late attempt to authenticate the materials that are the subject of Plaintiff's third through eighth objections in Docket No. 36-2 (there being no hesitancy at all in the Court's decision to decline consideration of the materials that are the subject of the first two objections), it is not clear that (or how) consideration of those materials would impact the question of *class certification*, and the Court will not unnecessarily resolve the merits of the action on this motion. If indeed Defendants believe that the material is germane to the class certification question, they may move for decertification and present the material at a time that allows all parties and the Court to meaningfully discuss it as part of that motion.

plaintiff's underlying claim"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits *if they overlap* with the Rule 23(a) requirements.") (emphasis added); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n.15 (9th Cir. 2009); *Blackie v. Barrack*, 524 F.2d 891, 900-01 & n.17 (9th Cir. 1975).

B. Numerosity

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires a demonstration that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally speaking, 40 or more individuals in a proposed class has been considered sufficient to satisfy the numerosity requirement. *See, e.g.*, *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not."); *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 425 (N.D. Cal. 2011).

Here, Plaintiff relies on Defendants' assertion, in their removal paperwork, that there were 4,852 "California paid user[s]" covering the time period between January 1, 2017 (when the My Fitness by Jillian Michaels program was released) and August 20, 2018 (when Plaintiff filed the initial Complaint). *See* Declaration of Kenneth Lancaster in Support of Defendants' Notice of Removal, Docket No. 1-11, ¶ 4; *see also* Notice of Removal by Defendants Jillian Michaels, EM Digital, LLC, and Empowered Media, LLC Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (CAFA), Docket No. 1, ¶ 15. That number would clearly far surpass any necessary numerosity figure.

Nevertheless, Defendants challenge Plaintiff's ability to satisfy Rule 23(a)(1). Their primary opposition on this point rests upon their criticism of Plaintiff's chosen class definition which, they assert, "does not take into account consumers who: signed up on different platforms, were charged by such platforms, and who properly and reasonably understood the recurring nature of their subscription." Docket No. 33, at 15:6-13. They further take the view that "Plaintiff fits into an extremely small subcategory of users as she was one of only twenty-nine (29) users who signed up for the MFJM service for a monthly

4

[sub]scription during the 'New Year New You' promotional period." *Id.* at 15:13-15.

In essence, Defendants argue that the class should be defined – if at all – with parameters different from those Plaintiff proposes. Whatever power that argument may or may not have in connection with other considerations taken up in a class certification motion subject to Rule 23's standards, it holds no sway here. Numerosity is – by necessity – adjudged according to the class definition *a plaintiff proposes*, not by some other definition that may or may not be appropriate in the case or that might be proposed by some other putative class representative (or defendant).

Defendants' only other argument for why Plaintiff's numerosity showing is not sufficient would appear to consist of a contention that Plaintiff would require *more evidence* to support the number of class members she has identified. *See* Docket No. 33, at 14:15-20. As Plaintiff notes, however, Defendants themselves relied on the 4,852 number as part of their basis for establishing jurisdiction in this Court under the Class Action Fairness Act. Surely that apparent admission, for jurisdiction-establishing purposes, would be sufficient for satisfying Rule 23(a)(1)'s numerosity requirement, for certification purposes.

The Court concludes that Plaintiff has unquestionably made an adequate showing of numerosity under Rule 23(a)(1).

C. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been permissively construed. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Although there must be common questions of law or fact, it is not necessary that all questions of law or fact be common. *See id.* ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); *see also Staton v. Boeing Co.*, 327 F.3d 938, 953-57 (9th Cir. 2003). There needs to be only a single common question. *See Dukes*, 564 U.S. at 359. Crucially, "[w]hat matters to class certification…is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 350 (omitting internal

quotation marks) (quoting Nagareda, <u>Class Certification in the Age of Aggregate Proof</u>, 84 N.Y.U. L. Rev. 97, 131-32 (2009)).

There is clearly at least a single sufficiently-important common question here. Plaintiff's theory is that Defendants' have not offered "clear and conspicuous" communications that the charges for their service are recurring, thereby violating the ARL (in particular, California Business and Professions Code §§ 17601(c) and 17602(a)(1)). She also asserts that Defendants violated California Business and Professions Code Section 17602(a)(3) by not providing a legally-compliant acknowledgment in the e-mails that are automatically sent to consumers upon subscription.[5]  Violation of the ARL can form the basis for the claims remaining in this case.  Then the question is simply whether these common facts[6] violate the legal principles these claims bring into play.  *See Wahl v. Yahoo! Inc.*, No. 17-cv-02745-BLF, 2018 WL 6002323, *2 (N.D. Cal. Nov. 15, 2018) ("The commonality requirement is met because the key issue in the case is the same for all class members – whether Yahoo violated the ARL by automatically renewing subscriptions to Rivals.com without statutorily required notice."); *Kissel v. Code 42 Software, Inc.*, No. SACV 15-1936-JLS (KES), 2017 WL 10560526, *4 (C.D. Cal. Oct. 4, 2017); *Doe v. Neopets, Inc.*, No. CV 15-8395 DMG (PLAx), 2016 WL 7647684, *3 (C.D. Cal. Feb. 22, 2016).

Plaintiff asserts that "the same or substantively similar language was present[ed] to consumers through the 'My Fitness by Jillian Michaels' website, as well as through the Apple and Android app stores" and that "[e]very Class member was exposed to the same display in the sign up language for the 'MY Fitness by Jillian Michaels' [service] through

---

[5] In her Reply, Plaintiff clarifies her view that "[t]he acknowledgment emails do not state three material terms: (1) the subscription fee; (2) the subscription length; and (3) that the subscription will be ongoing in perpetuity unless the consumer cancels."  Docket No. 36, at 5:6-8.

[6] As discussed elsewhere herein, it is at least Plaintiff's *theory* that Defendants' communications, over the relevant time period and across the various applicable platforms – website, Apple and Google – have not changed at least in the ways that are key to the claims/theories underlying their case.  Although the Court struggles to find citations to clear *evidence* of this theory, it does observe evidence supporting the theory that all "acknowledgment" e-mails Defendants send upon a consumer's successful subscription has been the same over time and across platforms.  *See, e.g.*, Docket No. 29-2, at 109:1-3, 110:1-14; Docket No. 29-6.  At a minimum, therefore, there is a common question insofar as those acknowledgment e-mails are concerned.  In addition, Defendants have not, by way of clear evidence, demonstrated the falsity of Plaintiff's theory that the pre-subscription communications were also uniform over time and across platforms at least in the ways that are germane to Plaintiff's theory of the case and asserted claims.

the website or app stores."  Docket No. 29, at 16:1-5; *see also* Docket No. 36, at 6:17-20 ("[P]utative class members were exposed to virtually the same display layout as seen below, which does not comply with the ARL as any mention of recurring fees is relegated in all of the layouts to the bottom portion in a smaller size and lighter color than the surrounding text.").  In addition, she contends that "each class member was purportedly sent the same email by Defendants," and the email "does not contain 'an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms,'" nor "the actual financial terms (how much per month) or that the fee is recurring."  Docket No. 29, at 16:7-11; Docket No. 29-2, at 109:1-3, 110:1-14; Docket No. 29-6.  Finally, Plaintiff claims that "the cancellation policy is uniform."  Docket No. 29, at 16:12.

  While Defendants emphasize that customers can sign up via different methods of doing so – via the website, via Google or via Apple – they have not evidenced that the communications/representations that are particularly at issue in this lawsuit differ depending on that method of access to the subscription service.  Instead, the evidence is only that Defendants "are constantly . . . revising the language that appears on the website," with "numerous . . . changes to the 'Terms of Use' and service language," such that "[c]onsumers' experience with the service differs from person to person based on a variety of factors, including the date that they subscribed, the method and service they subscribed to, and the conditions read while subscribing."  Declaration of Kenneth Lancaster in Support of Defendants' Response in Opposition to Plaintiff's Motion for Class Certification, Docket No. 33-13, ¶ 5; *see also* Docket No. 33, at 23:3-5, 23:12-15.[7]  In their Opposition brief, while Defendants further "set the table" for an argument that Plaintiff had a "unique experience" because of when she signed up for Defendants' service, Docket No. 33, at 4:14, it appears instead that they argue that all consumers encounter the same information and have the same opportunities.  *See, e.g.*, *id.* at 8:5 ("The same is true for all other users of the MFJM service."); *id.* at 9:16 ("At the bottom of each and every page of the subscription process . . . ."); *id.* at 9:23-25 ("[A]ll consumers are informed in a number of clear and conspicuous ways of the continuous service offer terms and the recurring subscriptions."); *id.* at 9:28-10:7 ("Once a user consented to and signed up for the MFJM

---

[7] While Defendants include a heading in their Opposition brief that states "Plaintiff's Proposed Class Lacks Commonality and Predominance," Docket No. 33, at 22:5, their actual argument in that section appears to be dedicated to arguing solely the issue of predominance under Rule 23(b)(3).  *See id.* at 23:1-21.

service, they were immediately sent a 'Welcome' e-mail . . . .  This e-mail, taken together with all of the other information provided to consumers during the subscription process, clearly satisfies the acknowledgment requirement . . . ."); *id.* at 10:24-25 ("Every consumer across all platforms receives the MFJM welcome e-mail.").  If all consumers encounter the same information, it is no defense *to class certification* to simply argue *on the merits* that the information does not violate the law.  Instead, it simply establishes that the commonality requirement (and likely the predominance requirement as well) is satisfied, with the merits of that/those common issue(s) being determined later.

This is a point of emphasis in Plaintiff's Reply brief (though she does not couch it solely in terms of commonality):

> The fact that Defendants offered different promotions and rates at various times is immaterial as the cost of the subscription is not the relevant issue as to whether Defendants complied with the ARL; rather, the language, text, and display that Defendants used throughout the website and iOS and Android apps and whether they complied with the ARL are the issues that predominate and are typical of every consumer who ultimately subscribed to Defendant' 'My Fitness by Jillian Michaels' service, [and they are] issue[s] that can be proven with common proof and applies to every 'My Fitness by Jillian Michaels' consumer from the January 1, 2017 launch to the present.

Docket No. 36, at 2:11-19; *see also id.* at 5:27-6:1 ("[T]he different promotions and/or rates do not affect the fact that the recurring and cancellation terms were not clear and conspicuous pursuant to California law.").  Thus, she views it – as does the Court – as something of a "red herring."  *Id.* at 3:14-16.[8]

It would appear that there are both common issues of fact (the language in Defendants' communications) and of law (the legal effect of that language under Sections 17200 and 17500, the CLRA, and the ARL).  *See, e.g., Hadley v. Kellogg Sales Co.*, No.

---

[8] In her Reply brief, Plaintiff notes that Defendants recently produced documents reflecting use of the word "Recurring" as part of the subscription selection options on the website and through the apps.  *See* Docket No. 36, at 8:11-15.  Plaintiff notes that, at least as part of their submission along with their Opposition brief, "Defendants failed to state when these documents were created, who created them, and when they were on display[] to consumers."  *Id.* at 8:15-17.  It is conceivable that these documents may be important considerations for purposes of determining liability – that is an issue that is largely for another day.  But if indeed it is true that Defendants have failed to satisfactorily show that these materials were introduced at some point in time *after* introduction of the service in January 2017 or that they were used on one subscription platform (i.e. the website) but not on others (i.e. via Apple or Google), then it is not clear why these materials would matter for purposes of assessing either commonality or predominance on this motion.  Moreover, even if Defendants *did* make this showing, it would still be unclear how it could preclude Plaintiff from demonstrating *at least* commonality, as discussed herein.

16-CV-04955-LHK, 324 F.Supp.3d 1084, 1093 (N.D. Cal. 2018) (finding commonality satisfied because of numerous common questions of law and fact, "such as whether the challenged health statements are unlawful, unfair, deceptive, or misleading").  As with numerosity, therefore, the Court easily concludes that Plaintiff has sufficiently demonstrated commonality under Rule 23(a)(2).

    D.  <u>Typicality</u>

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose . . .."  *Id.* (citation and internal quotation marks omitted).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.* (citation and internal quotation marks omitted); *see also General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("*Falcon*") (indicating that class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members"); Phillips & Stevenson, RUTTER GROUP PRAC. GUIDE:  FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter Group 2019) ("<u>Phillips & Stevenson</u>"), ¶ 10:289, at 10-92 ("A plaintiff's claim is typical if it:  arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and is based on the same legal theory as their claims.") (emphases omitted).  The representative plaintiff's claims need not be identical to those of the class, but rather need only be "reasonably co-extensive with those of absent class members . . .."  *Hanlon*, 150 F.3d at 1020.  In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."  *Falcon*, 457 U.S. at 157 n.13.

Especially viewing typicality from the vantage point of whether the same course of *Defendants' conduct* produced Plaintiff's alleged injury, Plaintiff's claims meet the "nature of the claim" and "reasonably coextensive" typicality requirements.  As she has clearly explained in her motion, Plaintiff's claims arise from the same conduct by Defendants as do the claims of all other class members, she has allegedly suffered the same injury, and

she proceeds under the same legal theories.  Her claims meet the basic Rule 23(a)(3) typicality requirement.  *See generally Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013).

However, while it is true that "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct," *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted), *defenses unique* to the proposed class representative can make that individual unsuitable as a representative.  *See Ellis*, 657 F.3d at 984; *see also Hanon*, 976 F.2d at 508 (citations and internal quotation marks omitted) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.").  It is here where Defendants' spend the bulk of their attention, at least insofar as the typicality requirement is concerned.

Defendants take issue with Plaintiff's motivation for filing suit; that she used her husband's credit card when signing up for the service; that she signed up using the website platform (as opposed to the large amount of the proposed class that went through the subscription process provided by the Apple and Google app stores), and did so during a limited-time holiday promotional period; that the efforts she undertook to cancel her subscription were, in Defendants' obvious opinion, somewhat lackluster; and that she claims she never received the welcome e-mail containing links to sign-in and cancel the account, whereas Defendants' records show that she did receive such an e-mail.  The Court can accept that some or all of these issues may make Plaintiff's interaction with Defendants and their service somewhat unique.  But apart from their purely-rhetorical purpose, the Court observes no robust effort from Defendants to explain why these differences or unique aspects of Plaintiff's circumstances make a difference with respect to the types of claims she brings here.  If they do not make a difference, then the Court might easily conclude that they are more likely to serve a role as temporary distractions, not defenses that are likely to commandeer the litigation to the putative class's detriment.

Plaintiff has established that she meets Rule 23(a)(3)'s typicality requirement, and Defendants have not provided a convincing explanation for why the Court should conclude

otherwise.

     E. <u>Adequacy</u>

     Representative parties must also fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). Generally speaking, "[w]hether the class representative[] satisf[ies] the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (omitting internal quotation marks) (quoting *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) and *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)); *see Ellis*, 657 F.3d at 985 ("To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"); *see also Sali*, 909 F.3d at 1007; *Staton*, 327 F.3d at 957; *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("*Sands*") ("The record indicates clearly that [the class representative] understands his duties and is currently willing and able to perform them. The Rule does not require more.").

     There is no information before the Court suggesting any antagonism between Plaintiff and the Class she seeks to represent, and Plaintiff is obviously vigorously prosecuting this action. *See In re Mego Fin'l Corp. Secur. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). She also reports active interest and involvement in her counsel's preparation and prosecution of this litigation. *See* Declaration of Plaintiff Lisa Friedman in Support of Plaintiff's Motion for Class Certification, Docket No. 29-7, ¶ 3. The Court is not aware of any information which would suggest that the suit is collusive as between Plaintiff and Defendants. Moreover, the Court is inclined to conclude that the proposed class counsel would be qualified to litigate this action on a class-wide basis. *See Falcon*, 457 U.S. 147, 157 (1982); *Sali*, 909 F.3d at 1007; *Radcliffe v. Hernandez*, 818 F.3d 537, 547-48 (9th Cir. 2016); *see also* Declaration of John P. Kristensen in Support of Plaintiff's Motion for Class Certification, Docket No. 29-1, ¶¶ 3-14, 16-19.

     The primary concern Defendants appear to raise here – apart from "incorporat[ing]

the entirety of their argument against Plaintiff's typicality" into their argument that she is also inadequate, Docket No. 33, at 19:13-15 – is suspicion that Plaintiff's husband – himself a plaintiff's side class-action lawyer and an at-least-occasional collaborator with Plaintiff's counsel in this case – was the driving-force behind this litigation.  Even if this is true, however, Defendants have not adequately explained why it raises a concern in line with any of the aforementioned principles that typically shape adequacy analysis under Rule 23(a)(4).  Defendants complain that it exhibits an "obviously biased relationship," but they do not explain what that "bias" is or how the story behind the genesis of this lawsuit would do harm to the other members of the class Plaintiff seeks to represent.

Beyond these points, Defendants assert that Plaintiff's "credibility" is in question and that she failed to take a more hands-on role in "participation" in the discovery-process. *See* Docket No. 33, at 19:27-21:7.  But this Court sees nothing demonstrably out-of-the-ordinary here – as compared to the countless other class representatives it has confronted in class litigations – with respect to Plaintiff's role in discovery or in statements that might be viewed as inconsistent with certain allegations in her pleadings.

Plaintiff has sufficiently demonstrated adequacy, satisfying Rule 23(a)(4).

F.  "Ascertainability"

Defendants also challenge the "ascertainability" of Plaintiff's proposed class. Although ascertainability is not one of the considerations expressly recognized by Rule 23, considerations relevant to it will sometimes lead to a rejection of certification.[9]  Here, however, the Court has no concerns.

Defendants argue that the proposed class is not ascertainable because it includes both potentially injured and completely uninjured consumers and because it believes that the overwhelming majority of users of Defendants' service affirmatively acknowledge the conditions and use either the website or the apps without issue or complaint, making Plaintiff herself atypical and unique.  Defendants also assert that ascertainability is not

---

[9] It is worth noting here that the Ninth Circuit has called into question such a requirement (and has outright rejected an "administrative feasibility" requirement for determining class-membership).  *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125-33 (9th Cir. 2017) (rejecting argument that Rule 23 requires that proposed class representative "demonstrate that there is an administratively feasible way to determine who is in the class"), cert. denied, 138 S.Ct. 313 (2017); *see also Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228, 231-32 (C.D. Cal. 2018); *Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513, 517 n.4 (C.D. Cal. 2017); *Estakhrian v. Obenstine*, 320 F.R.D. 63, 91-92 (C.D. Cal. 2017).

satisfied where the merits of every individual's claims must be assessed to determine whether they are class members.

First, Plaintiff's "atypicality" or "uniqueness" is assessed above under the "typicality" requirement established by Rule 23(a)(3). Second, there is no need for the Court to assess the merits of any claim in order to determine whether someone falls within the scope of Plaintiff's proposed class. Instead, the only questions are: are they a California resident?; did they subscribe to the My Fitness by Jillian Michaels service?; were they first charged from January 1, 2017 to the present?; and was their credit or debit card automatically charged on a recurring basis as part of their subscription? Finally, Defendants' concern about a class including uninjured consumers appears based on district court decisions that have identified that as an issue in their certification analyses. *See* Docket No. 33, at 13:2-8. However, more-recently, even the Supreme Court has at least suggested that inclusion of uninjured individuals in a class is not heretical to certification. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1050 (2016) (indicating that uninjured class members may be identified at the time of allocation/disbursement of damages); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016) ("[E]ven a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct.").[10] Moreover, if Defendants committed the statutory disclosure-based violations at issue here and if Plaintiff is correct that "all California consumers were directed to the same messaging and display regardless of sign-up method" and "all California consumers (regardless of sign-up procedure) received the same acknowledgment 'welcome' e-mail," Docket No. 36, at 4:26-5:6, it is difficult to understand their position that only some consumers who were the recipients of the communications in question would be "injured," while others would not be.

In short, the Court is not troubled by any issue of ascertainability in this case.

G. Rule 23(b)(2)

Having satisfied the requirements of Rule 23(a), and recognizing that she must also fit within one of the subparagraphs of Rule 23(b), Plaintiff believes she meets the

---

[10] Of course, it is a commonplace that variations in damages – which is normally an issue addressed when examining predominance under Rule 23(b)(3) – do not prevent certification. *See, e.g., Sali*, 909 F.3d at 1011; *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120-21 (9th Cir. 2017); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010).

qualifications for certification under both Rule 23(b)(2) and Rule 23(b)(3).  Plaintiff argues that certification is appropriate under Rule 23(b)(2) because she seeks an order requiring changes in language Defendants use in securing, attracting or communicating with, subscribers.

A class may be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Although Rule 23(b)(2) classes are "most common in the civil rights context," many different kinds of Rule 23(b)(2) classes have been certified. *Senne v. Kansas City Royals Baseball Corp.*, __ F.3d __, 2019 WL 3849564, *6 (9th Cir. Aug. 16, 2019).  Rule 23(b)(2) applies when a single injunction would provide relief to each member of the class, but does not authorize class certification when each individual class member would be entitled to a different injunction.  *See Dukes*, 564 U.S. at 360. However, at the class certification stage "[p]laintiffs do not need to specify the precise injunctive relief they will ultimately seek."  *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 972 (9th Cir. 2019).

For certification pursuant to this provision, not every single class member must have been injured or aggrieved in the same way by the defendant's conduct; a pattern of activity that is likely to be the same as to all members of the class is sufficient.  *See* Phillips & Stevenson, ¶ 10:399, at 10-122.  But a Rule 23(b)(2) class must be cohesive, through, for example, a significant common trait.  *See id.*, ¶ 10:404.5, at 10-126.  The Ninth Circuit has rejected, however, any "cohesiveness" requirement that calls for an analysis similar to Rule 23(b)(3)'s predominance requirement (because the predominance requirement does not apply to Rule 23(b)(2) certifications at all).  *See Senne*, __ F.3d __, 2019 WL 3849564, at *14; *see also Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Yet, "[c]lass certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001); *see also Ellis*, 657 F.3d at 986 (post-*Dukes* decision reiterating this rule from *Zinser*).  Before *Dukes*, the question was whether monetary damage requests were merely "incidental" to the litigation, but the Ninth Circuit indicated that position was in-question post-*Dukes*.  *See Ellis*, 657 F.3d at 986 ("Although we have previously held

that in 'Rule 23(b)(2) cases, monetary damage requests are generally allowable only if they are merely incidental to the litigation,' this standard has been called into doubt by the Supreme Court.") (omitting internal citation) (quoting *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 860 (9th Cir. 2001) and citing *Dukes*, 131 S.Ct. at 2560); *Dukes*, 131 S.Ct. at 2557 ("We now hold that [claims for monetary relief] may not [be certified under Rule 23(b)(2)], at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief."). Even under the standard the Ninth Circuit applied in Rule 23(b)(2) cases pre-*Dukes*, there was no bright-line rule for determining what damages were "incidental." *Molski v. Gleich*, 318 F.3d 937, 949-50 (9th Cir. 2003). Rather, at that point the Ninth Circuit instructed courts to "examine the specific facts and circumstances of each case . . . focus[ing] on the language of Rule 23(b)(2) and the intent of the plaintiffs in bringing the suit." *Id.* at 950 (citations omitted).

However, *Dukes* indicated that:

[t]he mere "predominance" of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)'s procedural protections: It neither establishes the superiority of class adjudication over individual adjudication nor cures the notice and opt-out problems. We fail to see why the Rule should be read to nullify these protections whenever a plaintiff class, at its option, combines its monetary claims with a request – even a "predominating request" – for an injunction.

564 U.S. at 363-64. Thus, post-*Dukes*, *Ellis* instructs that "[i]nstead of considering the amount of the damages sought or the subjective intent of the class members seeking relief to determine if injunctive relief 'predominates,' the relevant inquiry is what procedural safeguards are required by the Due Process Clause for the type of relief sought." 657 F.3d at 986-87 (citing *Dukes*, 564 U.S. at 361-63); *see also id.* at 987 (noting that "[t]he district court erred . . . by focusing on evidence of Plaintiffs' subjective intent, instead of on whether the monetary relief could be granted absent 'individualized determinations of each employee's eligibility for [monetary damages]'") (quoting *Dukes*, 564 U.S. at 366). Commenting on one of the procedural safeguards applicable in a Rule 23(b)(3) certification, but absent from a Rule 23(b)(2) certification, the Supreme Court had observed that the possibility that class members with individual monetary claims (that are left out of a Rule 23(b)(2) proceeding) could be collaterally estopped from pursuing those claims "underscores the need for plaintiffs with [such claims] to decide for themselves whether to

15

tie their fates to the class representatives' or go it alone – a choice Rule 23(b)(2) does not ensure that they have." *Dukes*, 564 U.S. at 364; *see also Aho v. AmeriCredit Fin'l Servs., Inc.*, 277 F.R.D. 609, 619 (S.D. Cal. 2011) ("Given that the restitution sought here approximates $4 million and will vary from class member to class member, and some individual relief may involve significant sums, these absent class members ought to be provided notice and an opportunity to withdraw from the class to pursue these and other potential damages and claims against Defendant on an individual basis if they so desire.").

Defendants' opposition to Plaintiff's pursuit of Rule 23(b)(2) certification is not robust.  In challenging Plaintiff's ability to secure certification under that subparagraph, Defendants do not adopt the approach set out in *Ellis*.  Instead, they first cite a reflection of the rule indicating that such certification is improper where the appropriate final relief relates exclusively or predominantly to money damages before quoting *Zinser* for allowable certification under the rule where monetary damages are "merely incidental" to the primary claim for injunctive relief.  *See* Docket No. 33, at 23:26-24:4.  While Defendants acknowledge that "Plaintiff does seek injunctive relief," they argue, without explanation, that the injunctive relief is "merely incidental to her request for damages, which she seeks for each of her alleged causes of action."  *Id.* at 24:4-6.

Plaintiff responds to Defendants' Opposition (such as it is) on the Rule 23(b)(2) issue by simply attempting to distinguish *Zinser* on its facts.  Beyond that, she merely argues that "the injunctive relief [she seeks] will provide effective relief to the Class" – "ensuring that Defendants comply with the ARL and cease unlawful conduct."  Docket No. 36, at 14:5-9.

As the foregoing indicates, the parties have not really addressed the issues that the Supreme Court and Ninth Circuit now indicate are central to a determination of whether certification is appropriate under Rule 23(b)(2).  Nor have they provided a solid reason for the Court even to reach a conclusion on the previously-applicable "incidental or not" test (though if the Court had to reach a conclusion one way or the other on that point, it would likely conclude that the requested monetary relief is *not* merely "incidental" to the injunctive relief).

Attempting to apply the principles established by the Supreme Court in *Dukes* and by the Ninth Circuit, post-*Dukes*, in *Ellis*, the Court is of the view that certain types of

monetary relief – such as statutory damages and punitive damages – would not appear to raise a "procedural safeguard" concern (at least from a class member's perspective) because those amounts would flow automatically from a showing of Defendants' liability or be adjudged based only on evidence from, or relevant to, Defendants and their financial condition. *See Ellis*, 657 F.3d at 987.  Still, one might wonder how any such class member could be assured of sharing in any amounts of those types of damages that are ultimately awarded if they receive no notice of the proceeding (due to certification under Rule 23(b)(2)).  *See* Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class.") (emphasis added); *compare* Fed. R. Civ. P. 23(c)(2)(B) (providing that "the court *must* direct . . . the best notice that is practicable under the circumstances" for any class certified under Rule 23(b)(3)) (emphasis added).

Restitutionary relief, however, raises a different issue, because each class member could be owed a different amount.  *See Ellis*, 657 F.3d at 987 ("Rule 23(b)(2) 'does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.'") (quoting *Dukes*, 564 U.S. at 360-61); *I.B. by and through Bohannon v. Facebook, Inc.*, 82 F.Supp.3d 1115, 1132-33 (N.D. Cal. 2015) (rejecting request to certify restitution claims under Rule 23(b)(2)); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 459 (S.D. Cal. 2014) ("Monetary recovery may be granted only if it is sufficiently incidental to warrant certification under Rule 23(b)(2), such as statutory or punitive damages that do not turn on the individual circumstances of class members.  By contrast, in the instant case Plaintiffs seek individualized monetary relief that would require assessment of each class member's claim based on how many products she purchased, which products she purchased, where she purchased, if she used a coupon, and so forth."). *But see Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 592-93 (C.D. Cal. 2011) (concluding that claims for punitive damages under CLRA, statutory damages under CLRA *and* for actual damages/restitution under CLRA/UCL could be certified under Rule 23(b)(2) as "incidental" to injunctive relief).  It may be that the amount is significant enough that class members should be afforded the opportunity to opt out of the litigation that Rule 23(b)(2) certification would not provide.  *See Dukes*, 564 U.S. at 364; *Ellis*, 657 F.3d at 987 ("Unlike classes certified under Rule 23(b)(1) or (b)(2), a (b)(3) class is not mandatory.  Instead,

putative class members are afforded the right to be notified of the action and to opt out of the class."); *Aho*, 277 F.R.D. at 619.  Moreover, for at least that portion of the proposed class that is now aware of the aspects of their transactions with Defendants that Plaintiff asserts was effectively hidden from the class at the outset, restitutionary relief (and other monetary relief) may be the only meaningful relief provided – injunctive relief would, at this point in time, be forcing Defendants to tell those consumers that which they by now already know.  Thus, for at least that portion of the class, any entitlement to injunctive relief, at that point in time, would seem to be nothing more than a bedrock upon which claims for money could be based.  *See Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481-82 (N.D. Cal. 2014) (concluding that certification under Rule 23(b)(2) was inappropriate because, among other reasons, the requested injunctive relief was simply a measure to allow class members to make refund requests); *Algarin*, 300 F.R.D. at 459 ("Certification is improper where, as here, the request for injunctive and/or declaratory relief is merely a foundational step towards a damages award which requires follow-on individual inquiries to determine each class member's entitlement to damages.").

    For the foregoing reasons, the Court does not believe that Plaintiff has – to this point – sufficiently demonstrated grounds for certification pursuant to Rule 23(b)(2).  Notwithstanding that shortcoming, however, if there *will* be a class certified in this case pursuant to Rule 23(b)(3), there either seems to be little reason not to *also* have a Rule 23(b)(2) class or there is no reason to even engage in the Rule 23(b)(2) analysis because a class will be certified in any event.  *Cf. Ellis*, 657 F.3d at 987 ("[I]f the district court certifies a (b)(3) class in place of, or *in addition to* a (b)(2) class, it may determine that the punitive damages claim is more appropriate to a (b)(3) class.") (emphasis added).  There appears to be little doubt Plaintiff could obtain injunctive, declaratory, or any other necessary relief in a Rule 23(b)(3) class action.  *See Bauman v. U.S. Dist. Court*, 557 F.2d 650, 659 n.13 (9th Cir. 1977) (referring to case that other court had found "maintainable as a class action under either Rule 23(b)(2) or (b)(3) because both injunctive relief and money damages were sought"); *Lidie v. State of Cal.*, 478 F.2d 552, 555 (9th Cir. 1973) (rejecting Rule 23(b)(3) certification because representatives – who sought injunctive relief – were not typical of the class); *see also Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 647 (8th Cir. 2012) (involving "relatively straightforward declaratory

judgment action seeking injunctive relief under Rule 23(b)(3)"); *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 826 (7th Cir. 2011) ("The proper approach in this case would thus have been for the plaintiffs to seek class certification under Rule 23(b)(3)…but to ask for injunctive as well as monetary relief."). Thus, the Court now turns to the question of certification pursuant to Rule 23(b)(3).

> H. Rule 23(b)(3)

Under Rule 23(b)(3),

> [a] class action may be maintained if Rule 23(a) is satisfied and if:
> . . .
> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" and is "much more rigorous" than commonality. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). It does not involve counting the number of common issues, but weighing their significance. *See, e.g., Sands*, 244 F.3d at 1163 (contrasting the "number and importance" of common issues with the "few" and "relatively easy" individualized issues). In addition, the predominance analysis looks, at least in part, to whether there are common issues the adjudication of which "will help achieve judicial economy," further the goal of efficiency and "diminish the need for individual inquiry." *See Vinole*, 571 F.3d at 939, 944 (quoting and citing *Zinser*, 253 F.3d at 1189); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) ("A principal purpose behind Rule 23 class actions is to promote 'efficiency and economy of litigation.'") (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)); Phillips & Stevenson, ¶ 10:411, at 10-

127 – 128 ("The objective is to promote economy and efficiency in actions that are primarily for money damages.  Where common questions 'predominate,' a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class.").  "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

Again, the Court has explained why it believes there are common issues in this case. Those common issues are key – the content of the communications and whatever the legal effect might be of that content (or whatever is omitted or minimized therein).  The only difference that Defendants clearly identify as one they believe would require classmember-by-classmember resolution (apart from the general assertion, noted above in connection with the commonality discussion, that classmembers may have been "presented with separate screens and even entered into separate contracts," Docket No. 33, at 24:27-25:1, though not in ways Defendants have evidenced would appear to make a difference for the particular issues presented in this case[11]) is the reliance requirement posed for CLRA claims.  *See id.* at 25:16-19.[12]  Still, Defendants do not argue the point in detail.  Plaintiff

---

[11] *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 737 (9th Cir. 2007) (affirming district court's view that "individual circumstances regarding how these disclosures were read or received would not destroy predominance" where claim was "based on uniform disclosures" to all of defendant's customers, even though appellate court "might have decided the issue differently," because its "review [was] 'limited to assuring that the district court's determination has a basis in reason'") (quoting *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005)); *see also Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) ("Regardless of whether every class member was exposed to Dannon's television, print, and internet advertisements, the record clearly establishes that Dannon's alleged misrepresentations regarding the clinically proven health benefits of the Products are prominently displayed on all of the Products' packaging, a fact that Dannon has never contested.  Because, by definition, every member of the class must have bought one of the Products and, thus, seen the packaging, Plaintiffs have succeeded in showing that the alleged misrepresentations were made to all class members.") (omitting internal citations).

[12] Reliance is not required to show a violation of Section 17200.  *See In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020-21 (9th Cir. 2011), *abrogation on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), recognized by *Green v. Federal Express Corp.*, 614 Fed. Appx. 905, 906 (9th Cir. June 22, 2015); *see also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985-86 (9th Cir. 2015).  Moreover, to state Section 17200 and 17500 claims "based on false advertising or promotional practices," Plaintiff need "'only to show that members of the public are likely to be deceived.'"  *Pulaski & Middleman*, 802 F.3d at 985 (quoting *In re Tobacco II Cases*, 46 Cal.4th at 312).  "This inquiry does not require 'individualized proof of deception, reliance and injury,'" *id.* at 986 (quoting *In re Tobacco II Cases*, 46 Cal.4th at 320), and the likelihood of deception is assessed using a

responds by directing the Court to *Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1292-94 (2002).

"The [CLRA] prohibits 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services.'" *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (quoting Cal. Civ. Code § 1770(a)). While a CLRA plaintiff requires that each potential class member has both an actual injury and shows that the injury is caused by the challenged practice, *see Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 155-56 (2010), if a material misrepresentation has been made to the entire class, an inference of reliance arises as to the class. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011), abrogation on other grounds by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) *recognized by Green v. Federal Express Corp.*, 614 Fed. Appx. 905, 906 (9th Cir. June 22, 2015); *see also In re Vioxx Class Cases*, 180 Cal.App.4th 116, 129 (2009); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 612 (N.D. Cal. June 26, 2018) (indicating that a CLRA claim "'allows plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a reasonable person would have considered the defendant's representation material.' The standard 'does not require that class members have a uniform understanding of the meaning of' the challenged representation.") (quoting *In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919, 983 (C.D. Cal. 2015) and *Pettit v. Procter & Gamble Co.*, No. 15-cv-02150 RS, 2017 WL 3310692, *3 (N.D. Cal. Aug. 3, 2017)); *Ehret v. Uber Techs., Inc.*, 148 F.Supp.3d 884, 901-02 (N.D. Cal. 2015) ("[For a CLRA claim,] reliance can be established on a class-wide basis by materiality."). Moreover, in an omissions-based CLRA (or a Section 17200 case), "[a] plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision." *Daniel*, 806 F.3d at 1225. This

---

"reasonable consumer standard," *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017) (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)). "[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003)). Even where the Ninth Circuit has announced that "to establish a fraud claim under the UCL, a plaintiff must demonstrate actual reliance," it has been quick to note that such reliance "'is inferred from the misrepresentation of a material fact.'" *Friedman*, 855 F.3d at 1055 (quoting *Chapman v. Skype, Inc.*, 220 Cal.App.4th 217, 229 (2013)).

means "simply proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently.'"  *Id.* (quoting *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993)).  Beyond even that, "[t]hat one would have behaved differently can be presumed, or at least inferred, when the omission is material."  *Id.*

Thus, if Plaintiff can demonstrate materiality, individual reliance (and causation) issue(s) may go out the door.  The Court believes that Plaintiff has made a sufficient showing, at least at this point in time, of the materiality of the information allegedly insufficiently conveyed or omitted, and that such a question can ultimately be determined using common evidence, on a class-wide basis.  That common question and that common evidence will be of significant importance to the resolution of this litigation.

The Court can envision no other reason why common issues might not predominate in this action.  *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (indicating that cases raising Section 17200, Section 17500 and CLRA claims are "ideal for class certification because they will not require the court to investigate 'class members' individual interaction with the product'") (quoting *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 535 (C.D. Cal. 2011)); *Doe*, 2016 WL 7647684, at *5-6.  With Plaintiff having demonstrated to the Court's satisfaction that common issues predominate, only the question of "superiority" remains under Rule 23(b)(3).  With respect to the "matters pertinent" to a superiority finding under that Rule, the Court sees no significant likelihood of individual consumers desiring to pursue their claims individually when there is likely such a relatively small amount of money at stake for presumably a large number of class members.  It certainly is not aware of any such litigation proceeding currently.  It sees no reason why litigation should not be centralized in this forum and venue.  Finally, at least at this juncture, the litigation presents no obvious manageability concerns.  *See also Briseno*, 844 F.3d at 1128 (indicating that presumption against refusing to certify a class merely on the basis of manageability concerns "makes ample sense given the variety of procedural tools courts can use to manage the administrative burdens of class litigation" such as "divid[ing] classes into subclasses or certify[ing] a class as to only particular issues").

The Court therefore concludes that certification pursuant to Rule 23(b)(3) is appropriate here.

### III.  Conclusion

Having concluded that Plaintiff has sufficiently demonstrated the requirements for certification under Rules 23(a) and 23(b)(3), the Court will grant the motion.