Richard S. Busch, SBN 319881
rbusch@kingballow.com
Paul H. Duvall, SBN 73699
pduvall@kingballow.com
D. Keith Kelly II, SBN 323469
kkelly@kingballow.com
**KING & BALLOW**
1999 Avenue of the Stars; Suite 1100
Century City, CA 90067
Telephone: 424.253.1255
Facsimile: 888.688.0482

Attorneys for Defendants
JILLIAN MICHAELS, EM DIGITAL, LLC, and EMPOWERED MEDIA, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA FRIEDMAN, individually and on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JILLIAN MICHAELS, an individual; EM DIGITAL, LLC, a Florida Limited Liability Company; EMPOWERED MEDIA, LLC, a California Limited Liability Company; and DOES 1-100, inclusive,<br><br>Defendants. | Case No.: 2:18-cv-09414-GW-SS<br><br>**CLASS ACTION**<br><br>**Honorable George H. Wu**<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEFING IN SUPPORT OF DEFENDANTS JILLIAN MICHAELS, EM DIGITAL, LLC, AND EMPOWERED MEDIA, LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>Complaint Filed: August 20, 2018<br>Removed: November 5, 2018<br>Trial Date: March 2, 2020 |

# TABLE OF CONTENTS

I. Introduction ...................................................................................................1

II. Docket No. 39-13 Fully Satisfies Cal. Bus. & Prof. Code § 17602(a)(3)'s Acknowledgement Requirement.............................................1

    A.    A Series of Acknowledgements Amount to an Acknowledgement. ................................................................................5

III. Plaintiff Misunderstands the "Ostensible" Agency Doctrine and Ms. Michaels' Role. ......................................................................................9

IV. The Operative Version of Section 17602 is SB 313, as Enacted in 2010. 13

V. Conlcusion ..................................................................................................13

ii
DEFENDANTS' SUPPLEMENTAL BRIEFING IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# **TABLE OF AUTHORITIES**

Cases

*Brazil v. Dell Inc.*,
    585 F. Supp. 2d 1158 (N.D. Cal. 2008) ............................................................. 7

*In re Marriage of Bouquet*,
    (1976) 16 Cal. 3d 583 ......................................................................................... 7

*King v. Bumble Trading, Inc.*,
    393 F. Supp. 3d 856 (N.D. Cal. 2019) ............................................................... 7

*Kissel v. Code 42 Software, Inc.*,
    No. 15-cv-01936-JLS, 2016 U.S. Dist. LEXIS 184368 (C.D. Cal. Apr. 14, 2016) ................................................................................................................... 7

*Kissel v. Omega Nat. Sci., Inc.*,
    No. CV 16-2770-GW(SKx), 2016 U.S. Dist. LEXIS 187625 (C.D. Cal. Aug. 22, 2016) ............................................................................................................. 9

*Lopez v. Stages of Beauty, LLC*,
    307 F. Supp. 3d 1058 (C.D. Cal. 2018) ......................................................... 1, 5

*Mannheim v. Superior Court*,
    (1970) 3 Cal. 3d 678 ........................................................................................... 6

*Price v. Synapse Grp., Inc.*,
    No. 16-cv-01524-BAS-BLM, 2017 U.S. Dist. LEXIS 115363 (S.D. Cal. July 24, 2017) ............................................................................................................. 2

*Sagadin v. Ripper*,
    (1985) 175 Cal. App. 3d 1141 ........................................................................... 6

*Turner v. Association of American Medical Colleges*
    (2011) 193 Cal. App. 4th 1047 ...................................................................... 7, 8

Other Authorities

Advertising: Automatic Renewal Purchases: Bill Analysis Before the Sen. Judiciary Committee, SB 340 at p. 3 (2009-2010) (Stmt. of Sen. Yen) ....................... 4, 8

Rules

Cal. Bus. & Prof. Code § 17600 ..................................................................................... 7
Cal. Bus. & Prof. Code § 17601(b)(1)-(5) ..................................................................... 3
Cal. Bus. & Prof. Code § 17601(b)(3) ........................................................................... 5
Cal. Bus. & Prof. Code § 17601(b)(5) ........................................................................... 5
Cal. Bus. & Prof. Code § 17602 ............................................................................... 1, 13
Cal. Bus. & Prof. Code § 17602(a)(3) .................................................................. passim
Cal. Bus. & Prof. Code § 17602(a)(4) ........................................................................... 5
Cal. Bus. & Prof. Code § 17602(d)(1) ........................................................................... 1
Cal. Civ. Code § 2300 .................................................................................................. 11
Cal. Civ. Code § 2334 ..................................................................................... 10, 11, 12

# DEFENDANTS' SUPPLEMENTAL BRIEF

## I. Introduction

Pursuant to this Court's Minute Order dated October 24, 2019 (Dkt. 75), Defendants EM Digital, LLC, Empowered Media, LLC and Jillian Michaels (collectively "Defendants") hereby presents further supplemental briefing on (1) what the California legislature had in mind when it required an acknowledgement as set forth in Cal. Bus. & Prof. Code § 17602(a)(3); (2) their understanding of Plaintiff's ostensible agency argument as it applies to Defendant Jillian Michaels and whether there are any facts in the record to support such an argument; and (3) the effect, if any, of the amendment to Cal. Bus. & Prof. Code § 17602. (*See* Dkt. 75 at pp. 1-2). Defendants address these points in turn below.

## II. Docket No. 39-13 Fully Satisfies Cal. Bus. & Prof. Code § 17602(a)(3)'s Acknowledgement Requirement.

Cal. Bus. & Prof. Code § 17602(a)(3) makes it unlawful for a business with automatic renewal and/or continuous service offer terms to "[f]ail to provide an acknowledgement that includes the: [1] automatic renewal offer terms . . ., [2] cancellation policy, and [3] information regarding how to cancel in a manner that is capable of being retained by the consumer . . . ." Notably, Cal. Bus. & Prof. Code § 17602(d)(1) explicitly states that "[t]he requirement in paragraph (3) of subdivision (a) *may* be fulfilled after completion of the initial order," indicating that ARL acknowledgement may be presented **either before and/or after the completion of the offer** (emphasis added). *See Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1072 (C.D. Cal. 2018) (discussing defendant's pre-transaction disclosures as well as defendant's post-transaction disclosures, in their entirety, to analyze whether defendant had properly complied with the acknowledgment requirement of § 17602). The use of the word "may," rather than "shall" is purposeful. It seems much more important that the consumer be advised of the terms in an acknowledgement before

1

subscribing, rather than after (when the consumer would then have to actually cancel rather than be in a position to simply not complete the transaction), but the California Legislature gave the business the option of complying before or after. If the intention was to require the acknowledgement only *after* the transaction was completed, the California legislature would have certainly used the word "shall" and not "may."

In support of their Motion for Summary Judgment, Defendants submitted the Declaration of Kenneth Lancaster containing screenshots of each step of Defendant EM Digital's "My Fitness" registration process, Dkt. No. 39-13, fully satisfies the ARL's acknowledgement requirement. Page 3 of Dkt. 39-13 (the "Exhibit") is a screenshot of the final webpage a prospective consumer sees during the registration process and the sixth time the automatic renewal terms are presented. The Exhibit contains a summary of all the information affirmatively selected by the consumer during the subscription process, including the desired plan and corresponding price. In short, as discussed fully below, the Exhibit is an order summary page, which contains all of the information required by the ARL acknowledgment requirement, and which courts have found meet the "capable of being retained" standard required under Section 17602(a)(3). *See Price v. Synapse Grp., Inc.*, No. 16-cv-01524-BAS-BLM, 2017 U.S. Dist. LEXIS 115363, at *18-19 (S.D. Cal. July 24, 2017) ("order page" is sufficient for "capable of being retained."). Of course, as the Court pointed out during the hearing on Defendants' Motion for Summary Judgment, this is because the Exhibit, like any webpage, may be easily printed.[1]

---

[1] Additionally, for consumers that subscribe exclusively through the iOS or Android mobile apps, the ARL-compliant order page, *in addition to* Defendants' welcome email, is automatically sent to every user by Apple or Google, which also may be easily printed or saved in a user's e-mail inbox. (Declaration of Kenneth Lancaster "Lancaster Decl." in Support of Defendants' Supplemental Briefing at ¶¶ 2, 3, Exs. 1, 2). This acknowledgement, which is sent after the subscription occurs for iOS or Android mobile App users, complies with the acknowledgement requirement in a
(footnote continued)

The Exhibit contains all of the following information required by Section 17602(a)(3):

(1) That the subscription or purchasing agreement will continue until the consumer cancels;

(2) The description of the cancellation policy that applies to the offer;

(3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known;

(4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and

(5) The minimum purchase obligation, if any.

Cal. Bus. & Prof. Code § 17601(b)(1)-(5).

Contained within Senate Bill 340's Bill Analysis, the California Senate Judiciary states:

> **This bill would require, in any automatic renewal offer made on an Internet Web page, the business to clearly and conspicuously disclose the automatic renewal offer terms prior to the button or icon on which the customer must click to submit the order.** In any

---

post-transaction setting. While Defendants dispute that there is any requirement for this acknowledgment to be sent only post-transaction, for the reasons discussed above, Defendants note this fact to further demonstrate, among other things, that even if the acknowledgement is required post transaction, which it is not, the class would therefore be dramatically reduced, and would only consist of consumers who signed up on the website. If necessary, which it may not be depending on this Court's ruling on Defendants' Summary Judgment, Defendants intend to file a motion to decertify the class on this and other related bases, as the Court has invited Defendants to do at the appropriate time.

        automatic renewal offer made on an Internet Web page where the automatic renewal terms do not appear immediately above the submit button, the customer must be required to affirmatively consent to the automatic renewal offer terms.

Advertising: Automatic Renewal Purchases: Bill Analysis Before the Sen. Judiciary Committee, SB 340 at p. 3 (2009-2010) (Stmt. of Sen. Yen) (emphasis added) (Declaration of D. Keith Kelly II "Kelly Decl." at ¶ 2, Ex. 1). As described herein and setting aside all of Defendants' other good faith ARL disclosures, the Exhibit demonstrates that Defendants have complied with the language and intent of the California legislature and Cal. Bus. & Prof. Code § 17602(a)(3).

        Specifically, at the bottom of the Exhibit, under the "Customer Support" section, the following language is presented to each potential consumer: "To avoid being charged after starting a trial, per our user terms of use (see Sec. 23), you must cancel the trial before expiration. To cancel a trial or subscription please follow the instructions here."[2] (emphasis in original) This language appears at the bottom of each page no less than six (6) times during the subscription process and is *again* sent to every subscriber via the "welcome email." Clearly this language alone satisfies Cal. Bus. & Prof. Code § 17601(b)(1), (2).

        Next, the Exhibit presents the prospective consumer with a summary of the steps they have completed during the sign-up process. Under "2. Select Your Plan" it states the following: "Subscription: $14.99/month (USD) after 7-day free trial." The price given is based on the subscription length selected by the consumer during their sign-up process. (*See* Dkt. No. 39-7 "Lancaster Decl." at ¶ 24). This language plainly

---

[2] Just as in the welcome email, the "terms of use" and "here" words and/or phrases on the "My Fitness" website contain hyperlinks that further direct potential consumers to additional information should they have questions regarding cancellations or cancelling.

4
DEFENDANTS' SUPPLEMENTAL BRIEFING IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

lists the charges, the fact that such charges are recurring based on the user's selected plan, and the length and frequency that the charges will continue in accordance with Cal. Bus. & Prof. Code § 17601(b)(3), (4). Finally, Cal. Bus. & Prof. Code § 17601(b)(5) is likewise satisfied as it shows that the minimum purchase obligation is a single month. Given this language, prospective consumers are undeniably provided an acknowledgement as contemplated by the statute. Moreover, this is the final page of the subscription process whereby users confirm each of their prior selections, enter their credit card information, and then click "subscribe." Prospective consumers are conspicuously presented with the requisite language prior to selecting "Subscribe." Any argument that suggests this page does not comply with Section 17602(a)(3) is without merit.[3]

### A.  A Series of Acknowledgements Amount to an Acknowledgement.

The Exhibit fully complies with the ARL acknowledgement requirement. In addition, Defendants contend that the acknowledgement requirement can nonetheless be satisfied based on the series of ARL acknowledgments consumers view both as they complete the subscription process and immediately thereafter. *See Lopez*, 307 F. Supp. 3d at 1072. In addition to the Exhibit, each and every consumer is presented with multiple images, which, taken together, amounts to an acknowledgement. As discussed previously, the banner page that Plaintiff viewed contains information on promotional deals and the recurring nature of the subscription in multiple spots. (*See*

---

[3] As an additional note, the later-added "acceptance box" contained within the Exhibit has no bearing on Defendants' compliance with Section 17602(a)(3), nor do Defendants rely on its existence in any way with respect to the ARL's acknowledgement requirements. Rather, the Exhibit shows full compliance with the acknowledgement requirement *even without* the inclusion of the "acceptance box" because: (1) the automatic renewal terms are present just under the "Select Your Plan" area; (2) the cancellation policy is in the lower right corner under "Customer Support"; and (3) instructions on how to cancel may also be found in the lower right corner under "Customer Support."

Dkt. No. 39-8). Once the "Get Started" icon was selected, Plaintiff was taken to a screen where she created her account by entering an e-mail address and creating a password. (*See* Dkt. No. 39-9). The bottom of this screen contains information about the cancellation policy and how to cancel and links to both the "My Fitness" terms of use as well as more information on cancelling a trial or subscription. *Id*. This page is seen by every prospective subscriber. *Id*. After the log-in information is submitted, Plaintiff was immediately taken to the next page where she chose her desired subscription (in this case, monthly). (*See* Exhibit 5 to Decl. of John Kristensen in Support of Plaintiff's Opp. to Defendants' Mot. for Summary Judgment (Dkt. No. 57-9)). Again, consumers are clearly presented with links on the "My Fitness" terms of use, cancellation policy, and information on how to cancel. *Id*.

Immediately after choosing a subscription length and selecting the "Choose and Continue" icon, consumers are taken to the final screen (the Exhibit) where they review the information that they have selected and then enter their credit and/or debit card information before finally clicking the "Subscribe" icon. *See* the Exhibit. As soon as every consumer clicks "Subscribe," they are sent the "welcome e-mail" to the e-mail address that they entered when subscribing. (*See* Dkt. 39-10). As discussed previously, this welcome e-mail clearly describes the cancellation policy, cancellation process, and provides a link for more information on how to cancel, as well as an additional link to the support team if the consumer has further questions. Taken together, these webpages and confirmation e-mail form an ARL-compliant acknowledgement.

"First, it is fundamental that a statute be interpreted to effectuate the legislative intent." *Sagadin v. Ripper* (1985) 175 Cal. App. 3d 1141, 1178 (*citing Mannheim v. Superior Court* (1970) 3 Cal. 3d 678, 686). When the California legislature enacted the ARL statute, however, it did not discuss what it meant by "acknowledgement" and no court has yet interpreted the precise format in which the acknowledgement is

to be presented. In order to determine legislative intent, some of the factors to be considered are the "purposes of the legislation" and "public policy." *Id*. at 1179 (*citing In re Marriage of Bouquet* (1976) 16 Cal. 3d 583, 587).

The "purposes of the legislation" is clearly set out by the California legislature in Section 17600, which reads: "[i]t is the intent of the Legislature to end the practice of ongoing charging of consumer credit or debit cards . . . without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Indeed, courts have little need to interpret the clear legislative intent to protect "unwary consumers from being duped by unscrupulous sellers" under this statute. *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 868 (N.D. Cal. 2019)(*quoting Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1166 (N.D. Cal. 2008)).

That being said, legislative intent to "protect a person against the oppressive use of superior bargaining power" is not obfuscated where an acknowledgement occurs over the course of a subscription. *See Kissel v. Code 42 Software, Inc.*, No. 15-cv-01936-JLS, 2016 U.S. Dist. LEXIS 184368, at *4 (C.D. Cal. Apr. 14, 2016). Rather, legislative intent is equally, if not more, effectuated where a consumer is presented with the recurring nature of a subscription, cancellation policy, and information on how to cancel *numerous* times, as Defendants have done. For example, if this Court were to rule that an acknowledgement is valid only when contained on a single page, an unscrupulous business may avoid liability by presenting prospective consumers with all of the ARL's acknowledgement requirements on one of many webpages while requiring the consumer to go through a time-consuming subscription process with no additional language regarding any recurring subscription.

Next, "the court may consider the impact of an interpretation on public policy, for where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." *Turner v. Association of American Medical Colleges* (2011) 193 Cal. App. 4th 1047, 1057. To be certain, courts "must select the

7

DEFENDANTS' SUPPLEMENTAL BRIEFING IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute." *Id*.

As discussed above, the principal intent behind the enactment of the ARL statute was to protect California consumers from oppressive or morally repugnant businesses attempting to trick or dupe unsuspecting consumers into recurring subscriptions without their express consent. That is clearly not the case here. The uncontroverted evidence demonstrates that Defendants have not hidden any of the necessary disclosures and terms but rather have presented them to all users, Plaintiff included, no less than six (6) times during the registration process *and then* sent a welcome email. Surely then, a court interpreting the ARL's legislative intent should determine that repeated notice of the recurring subscription, cancellation policy, and how to cancel promotes, rather than defeats, the ARL's general purpose. *See Turner* 193 Cal. App. 4th at 1057; *see also* SB 340 Bill Analysis ("Kelly Decl." at ¶ 2, Ex. 1).

Furthermore, the sign-up process itself is straightforward and clearly presented to the consumer. From the initial banner page to the final page (the Exhibit), the consumer sees only five (5) screens, which may be completed in mere minutes. Upon registration, they receive the welcome e-mail, again containing the very same information as to MFJM's cancellation policy and how to cancel. In sum, this process is not time consuming and each consumer has ample opportunity to read, review, and acknowledge the terms that they have affirmatively selected prior to registration. The ease of this process is supported by the uncontroverted fact that 97 percent of MFJM's consumers who decide to cancel their subscription are able to do so without *any* additional help. (*See* D.E. 39-7 Lancaster Decl. at ¶ 31; *see also* Dkt. 72 Tentative MSJ Order at 17).

Although Defendants contend that they did, in fact, clearly present each consumer with a Section 17602(a)(3) compliant acknowledgement throughout the

registration process and specifically on the final subscription page, (the Exhibit), as discussed fully above, any interpretation of legislative intent that would require that an acknowledgement appear on a single page does not further the clear legislative intent of preventing businesses from unfairly and oppressively deceiving unsuspecting consumers. Instead, the best way to effectuate that intent is to make the recurring nature of the subscription, cancellation policy, and information on how to cancel available to consumers throughout the subscription process. As the uncontroverted evidence shows, this is precisely what Defendants have done.

Finally, it is unclear whether Plaintiff even has standing as to any alleged ARL acknowledgement violations because she has failed to, nor can she, allege any actual harm as a result of the purported failure to provide an acknowledgement. The ARL requires as much, as this Court has previously held. *Kissel v. Omega Nat. Sci., Inc.*, No. CV 16-2770-GW(SKx), 2016 U.S. Dist. LEXIS 187625, at *7 (C.D. Cal. Aug. 22, 2016)("Because Plaintiff has failed to allege any actual harm as a result of the alleged failure to provide the acknowledgement, the Court will find that Plaintiff lacks standing."). That is, of course, because the uncontroverted evidence shows that Defendants have provided ample compliant acknowledgements but Plaintiff chose not to read them because it simply did not matter to her.

### III. Plaintiff Misunderstands the "Ostensible" Agency Doctrine and Ms. Michaels' Role.

As to the Court's first request in its order for further briefing, it is unquestionable that Plaintiff argued in her Opposition to Plaintiffs' Motion for Summary Judgment that Ms. Michaels was the "ostensible agent" of Defendants EM Digital and/or Empowered Media and not the other way around. While Plaintiff's argument on this matter consists of a single paragraph, the argument is clearly framed as: "the 'My Fitness by Jillian Michaels' service uses Michaels' name and likeness in its advertising, marketing, and promotional material" and "Defendants use Michaels'

9
DEFENDANTS' SUPPLEMENTAL BRIEFING IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

branding and fame to reach consumers who are interested in Michaels' fitness products." [Dkt. 57 at 22:26-23:2]. This paints Defendants EM Digital as the parent, using Ms. Michaels as its agent to promote the service. Plaintiff should not be permitted to change theory mid-stream upon realizing that her "ostensible agent" argument is backwards.

On that note, there is simply no evidence to support the theory that Ms. Michaels should be held liable through the "ostensible agent" theory. As the Court points out in its tentative ruling, "ostensible agency is a theory that is normally employed to demonstrate the liability of *a principal* who has allowed the existence of conditions necessary to establish such 'ostensible' agency, and it is indisputably the purported agent who has engaged in the liability-producing conduct." (Dkt. 72 Tentative MSJ Order at 14). Plaintiff has not – nor can she – assert that Ms. Michaels is the principal in *any* agency relationship remotely connected with this action. The uncontroverted facts show that Defendant EM Digital is the only Defendant involved with MFJM communications. There is absolutely nothing in the record to indicate that Ms. Michaels has any involvement with MFJM's automatic renewal terms – or anything else for that matter – beyond supplying workout videos and meal plans. Therefore, any liability for the MFJM's purported violations of the ARL extend only to Defendant EM Digital who is the sole Defendant that is in control of MFJM communications.

"A *principal* is bound by *acts of his agent*, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof." (Dkt. 72 Tentative MSJ Order at 14 (quoting Cal. Civ. Code § 2334)) (emphasis in original).

Confusingly, Plaintiff's theory turns Cal. Civ. Code § 2334 on its head. Plaintiff's Opposition asserts that because Defendant EM Digital utilizes Ms. Michaels' name and likeness in connection with the MFJM service that Ms. Michaels,

10
DEFENDANTS' SUPPLEMENTAL BRIEFING IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

as EM Digital's purported agent, is liable for EM Digital's alleged violations of the ARL. Plaintiff's theory misapplies the facts *and* the doctrine of "ostensible agency." Of course, as Cal. Civ. Code § 2334 plainly points out, the doctrine of "ostensible authority" is used to bind *a principal* for acts of *its agent*.

First, Plaintiff does not allege that Ms. Michaels directed EM Digital to do *anything* with respect to the MFJM service. That is because, of course, the record plainly reflects that Ms. Michaels' involvement with the MFJM service is limited to supplying workout videos and meal plans. As the Court acknowledges, "it is seemingly without question that EM [Digital] . . . was in control of the [MFJM] [s]ervice." (Dkt. 72 Tentative MSJ Order at 15). Furthermore, Plaintiff chose not to depose Ms. Michaels in this action. If Plaintiff felt that Ms. Michaels was somehow the principal directing Defendant EM Digital in any conceivable manner, which she has <u>not alleged</u>, surely Plaintiff would have sought the deposition of such principal.

Second, Plaintiff cites Cal. Civ. Code § 2300 for the proposition that "[a]n agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (Dkt. 57 Plaintiff's Opp. at 22:23-25). Defendants truly are unable to understand its applicability in Plaintiff's Opposition and to this dispute. However, it seems that Plaintiff complains that because Defendant EM Digital "uses [Ms.] Michaels' name and likeness in its advertising, marketing, and promotional material" (Dkt. 57 Plaintiff's Opp. at 22:26-28) that such use somehow binds her to the alleged ARL violations of Defendant EM Digital, the entity actually operating the MFJM service. While legally incorrect, the factual assertion demonstrates that Plaintiff's claims are that Defendant EM Digital (principal) took affirmative steps which somehow bind Ms. Michaels (agent). This only affirms Plaintiff's incorrect principal-agent "ostensible agency" theory.

Third, Plaintiff fails to cite to any case that supports the theory that a purported agent can be held liable for the alleged acts of a principal. Defendants are unable to locate any – likely because Cal. Civ. Code § 2334 states that "[a] **principal** is bound by acts of his **agent**. . . ." Plaintiff would have the Court read the statute in such a way that would create potential liability for every single spokesperson of a product or brand. Obviously, that is not how "ostensible agency" is applied.

Finally, <u>for the sake of argument only</u>, if the Court found Ms. Michaels to be the principal of Defendant EM Digital with respect to the MFJM service, Plaintiff's claim would still fail because Plaintiff has not – <u>and cannot</u> – point to *any* evidence in the record to show that Ms. Michaels was in any conceivable way responsible for the MFJM auto-renewal policy or any purported violation of the ARL. Full stop. Because there is not a scintilla of evidence to show that Ms. Michaels directed EM Digital or *anyone* with respect to *any* alleged violation contained within Plaintiff's First Amended Complaint, the Court should adopt its tentative as to Ms. Michaels and grant Defendants' Motion for Summary Judgment.

Additionally, Plaintiff's conclusory assertion that "Defendants disregarded the corporate structure to operate, manage, and control the 'My Fitness by Jillian Michaels' service" (Dkt. 57 Plaintiff's Opp. at 22:19-20) should likewise fail as to Defendant Empowered Media. Plaintiff has brought forth absolutely no evidence as to any affirmative actions by Empowered Media with respect to the MFJM service other than its sharing of a CEO with EM Digital and having one of its employees do work on the service. Plaintiff's position runs afoul of universally recognized corporate law. Because Plaintiff cannot point to *any* evidence that "[EM Digital] disregarded the corporate structure" the Court should likewise grant Defendants' Motion for Summary Judgment as to Defendant Empowered Media.

## IV. The Operative Version of Section 17602 is SB 313, as Enacted in 2010.

As the Court points out, the current version of Cal. Bus. & Prof. Code § 17602 did not take effect until July 1, 2018, *after* Plaintiff purportedly registered for the MFJM service. California Senate Bill 313 amended Section 17602 and plainly states in Section 17602(f) that "[t]his section shall become operative on July 1, 2018." As such, the operative version of the ARL with respect to this action is Senate Bill 340, as enacted. Cal. Bus. & Prof. Code § 17602(f). Any amendments or additions created by Senate Bill 313's enactment is inapplicable to this dispute as it did not become operative until July 1, 2018. Defendants have prepared a redline comparison of 2009's SB 340 and 2017's SB 313 for the Court's review. (*See* Kelly Decl. at ¶ 3, Ex. 2). To the extent that Plaintiff relies on amendments or additions contained within SB 340, such reliance is misplaced and should not be considered by the Court.

## V. Conclusion

For the above stated reasons, Defendants respectfully request that this Court grant their Motion for Summary Judgment in full and dismiss this action without leave to amend.

November 4, 2019                          Respectfully Submitted,

/s/ Richard S. Busch
Richard S. Busch
**KING & BALLOW**
Attorneys for the Defendants
JILLIAN MICHAELS,
EM DIGITAL, LLC, and
EMPOWERED MEDIA, LLC